507 So.2d 1373 (1987)
John William FERRY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 67759.
Supreme Court of Florida.
April 30, 1987.
Rehearing Denied June 29, 1987.
James Marion Moorman, Public Defender, Tenth Judicial Circuit, and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Bartow, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellee.
EHRLICH, Justice.
Appellant, John William Ferry, Jr., appeals his conviction for five counts of first-degree murder and one count of first-degree arson, and his five sentences of death. We have jurisdiction, article V, section *1374 3(b)(1), Florida Constitution, and affirm the convictions, but vacate the sentences of death and remand for imposition of life sentences.
On July 2, 1983 Ferry entered the Winn Dixie store in Tampa where he regularly shopped carrying an "open-mouth" bucket which contained approximately four gallons of unleaded gasoline. Ferry entered the store through the electronically activated exit door, pitched the gasoline over a cashier and a group of customers, all unknown to him personally, ignited it and fled, laughingly exclaiming, "that will show those crazy bastards." Five persons ultimately died from this conflagration.
Ferry was arrested the following day. Ten days later he was declared incompetent to stand trial and was committed to Florida State Hospital where he remained for over a year. He was found competent to stand trial on March 12, 1985. He proceeded to a jury trial wherein he raised the defense of insanity. While both state and defense experts agreed that Ferry was an acute, chronic, paranoid schizophrenic, they differed on whether he was legally insane at the time of the offense. The jury found Ferry guilty on all counts and recommended life sentences for each of the murders. The trial court overrode the jury and imposed five sentences of death finding five aggravating factors[1] and two mitigating factors.[2]
Ferry's first contention on appeal is that he is entitled to a new trial because his sixth and fourteenth amendment rights were violated by his absence during the challenging of jurors. Ferry's position is that the record does not show that he made a knowing, intelligent and voluntary waiver of his presence as required by our decision in Francis v. State, 413 So.2d 1175 (Fla. 1982), nor does the record show that he ratified the actions of his counsel taken in his absence as required by our decision in State v. Melendez, 244 So.2d 137 (Fla. 1971). Based on our review of the entire record and the unique situation presented here, we find that neither Francis nor Melendez, which involved the defendant's involuntary absence, mandates that Ferry receive a new trial.
Before the beginning of the voir dire examination of all prospective jurors in this case, the defense moved for individual voir dire on the issues of pretrial publicity and the insanity defense. Although the trial court ultimately denied the motion, defense counsel suggested a procedure whereby only the judge and counsel for the state and defense would be present for the questioning of individual veniremen. Both the state and the court reminded defense counsel that the defendant's presence would also be required. After all prospective jurors had been questioned, the jury was excused from the courtroom for counsel to begin the exercise of challenges. At this point the trial court judge noticed that the defendant was leaving the courtroom with the bailiffs and inquired of defense counsel:
The Court: Counsel, I note that your client is being escorted into the alternate jury room. Is that with your permission?
Defense Counsel: Yes. That is acceptable with us. Waive his presence at this stage.
Defense counsel's reference to "us" is, standing alone, incapable of supporting a conclusion that counsel had conferred with the defendant prior to the waiver because Ferry was represented at trial by two attorneys. However, we do find that Ferry's absence was voluntary and that he did validly waive his presence. Our conclusion is based on several factors discernible from a reading of the record. First, we note that the trial court judge was keenly aware that the defendant's presence was required at all crucial stages of the trial. The trial court's concern is evidenced both by his reminder to defense counsel during argument on the motion for individual voir dire that the defendant would need to be present, and in the colloquy between the court and counsel concerning *1375 the defendant's leaving the courtroom before challenges to jurors began. Second, we will not presume that the bailiffs who escorted Ferry to the alternate juryroom simply removed the defendant on their own volition. A review of the entire trial proceeding reveals several instances when either counsel for the state or defense or the trial court judge noticed that the defendant was getting "restless" whereupon the court would recess to allow the defendant to smoke a cigarette or have a soft drink, typically in the alternate juryroom. Defense counsel during closing argument cited instances of Ferry's "inappropriate courtroom behavior" as evidence of Ferry's mental illness. In sum, the only logical explanation for Ferry's absence during the juror challenges is that this was simply another occasion when he wanted a break; i.e., Ferry voluntarily absented himself. The trial court's inquiring of defense counsel concerning Ferry leaving the courtroom took place in Ferry's presence and Ferry had the opportunity prior to leaving the courtroom to give counsel his input on the exercise of challenges. Under the totality of these circumstances, we find that Ferry voluntarily absented himself and his counsel validly waived his presence. A contrary holding based on these facts would promote deliberate sandbagging. We will not allow a defendant who voluntarily absents himself, who knows that juror challenges will take place in his absence and whose attorneys waive his presence, and cooperates without objection during the exercise of challenges to claim reversible error on appeal. See United States v. Willis, 759 F.2d 1486 (11th Cir.), cert. denied, ___ U.S. ___, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).
Ferry's voluntarily absenting himself renders our decision in Francis inapposite. See Muehleman v. State, 503 So.2d 310 (Fla. 1987). Francis had been excused by the court to go to the restroom. After he returned, counsel for both the state and defense, the judge and the court reporter retired to the juryroom to exercise the juror challenges. Francis was told by his counsel that he could not be present. At the hearing on Francis's motion for a new trial, Francis testified that he desired to be present and that he had not consented to his counsel's purported waiver of his right to be present. 413 So.2d at 1177-78. Based on such an affirmative record showing of non-waiver, we held that the error in preventing Francis from being present during the exercise of challenges required that he be given a new trial. Id. at 1179. Sub judice, it is unequivocal that no one prevented Ferry from being present during challenges and, as stated, Ferry was present when the trial judge noted he was leaving and questioned Ferry's counsel who then waived Ferry's presence. Coupled with the observation that there were numerous instances when the trial court liberally allowed Ferry a break, we conclude that Ferry is not entitled to a new trial on this ground.
Ferry's reliance on our decision in Melendez is equally misplaced. Melendez involved a situation where the defendant, because of lack of notice of his trial date, was not present for the examination, challenging or impaneling of the jury. Once the defendant appeared the trial court questioned him to ensure that he freely ratified the actions of his counsel taken in his absence. 244 So.2d at 138. As explained, Ferry's absence was voluntary, and his presence during his counsel's waiver mandates a finding that he at least had constructive notice of what would transpire in his absence. Based on these two factors, his subsequent acquiescence in his counsel's acts support finding a valid waiver. Id. at 140.
The trial court below did not have the benefit of our recent decision in Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), wherein we observed:
When a waiver is required of the defendant as to any aspect or proceeding of the trial, experience clearly teaches that it is the better procedure for the trial court to make inquiry of the defendant and to have such waiver appear of record. The matter would thus be laid to rest.
Id. at 11 n. 1.
We strongly recommend that the trial court judge personally inquire of the *1376 defendant when a waiver is required. Not only will this facilitate appellate review of these issues, it will also give the trial court an opportunity to cure any alleged prejudice to a defendant's rights, arising from the defendant's absence.
Ferry's next claim we choose to address centers on one of the state's expert witnesses, Dr. Mussenden, who allegedly commented on Ferry's right to remain silent. Mussenden testified that when attempting to interview Ferry, Ferry refused to discuss the crime with him because Mussenden was not his doctor or his lawyer. Ferry correctly points out that our decision in State v. Burwick, 442 So.2d 944 (Fla. 1983), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984), holds that the state may not introduce evidence of a defendant's invocation of his right to remain silent in order to rebut a defense of insanity. However, a violation of Burwick is subject to the harmless error analysis adopted by this Court in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). See Brannin v. State, 496 So.2d 124 (Fla. 1986). Assuming that Mussenden's testimony was fairly susceptible of being a comment on Ferry's right to remain silent, we find the error to be harmless. The fact that Ferry was distrustful of the examining psychiatrists and psychologist and refused to speak with them, at least initially, concerning the facts of the crime was brought out on several occasions during the trial. Based on our review of the entire record, it is clear beyond a reasonable doubt that this one comment did not affect the jury's verdict.
We have carefully considered Ferry's other challenges to his convictions and find them to be meritless and unworthy of discussion. Accordingly, we affirm the convictions for the five counts of first-degree murder and one count of first-degree arson.
The final issue we address concerns the trial court's override of the jury's recommendation of life sentences for each of the murders. Ferry claims that the override violates the standard set forth in Tedder v. State, 322 So.2d 908 (Fla. 1975). We agree. The principle enunciated in Tedder, "[I]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ," id. at 910, has been consistently interpreted by this Court to mean that when there is a reasonable basis in the record to support a jury's recommendation of life, an override is improper. See, e.g., Amazon. When there are valid mitigating factors discernible from the record upon which the jury could have based its recommendation an override may not be warranted.
All experts who testified below agreed that Ferry suffers from paranoid schizophrenia. The evidence produced during the guilt phase established that Ferry believed that the Russians and "other organizations," in order to take over this country, were attempting to sterilize all American males by poisoning the food and water. These organizations used "technology" to control people's minds. During his testimony, Ferry informed the jury that their thoughts were being controlled and that his own attorneys were "following orders." Ferry explained that these organizations were identifiable because they displayed the color red. In short, the evidence overwhelmingly showed that Ferry suffers from an extreme mental illness. The trial court judge correctly recognized this in his sentencing order by finding as mitigating factors that Ferry was under the influence of an extreme mental or emotional disturbance (section 921.141(6)(b)) and that Ferry's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired (section 921.141(6)(f)). Because the jury could have reasonably based its recommendation on these proven factors, the override was improper.
The state, however, suggests that the override was proper here because the trial court judge is the ultimate sentencer and his sentencing order represents a reasonable weighing of the relevant aggravating and mitigating circumstances. According to the state's theory, this Court should view a trial court's sentencing order with a *1377 presumption of correctness and, when the order is reasonable, this Court should uphold the trial court's sentence of death. We reject the state's suggestion. Under the state's theory there would be little or no need for a jury's advisory recommendation since this Court would need to focus only on whether the sentence imposed by the trial court was reasonable. This is not the law. Sub judice, the jury's recommendation of life was reasonably based on valid mitigating factors. The fact that reasonable people could differ on what penalty should be imposed in this case renders the override improper.
Accordingly, we affirm Ferry's convictions for five counts of first-degree murder and one count of first-degree arson, but vacate the sentences of death and remand for the imposition of life sentences in accordance with the jury's recommendation.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] § 921.141(5)(b), (c), (d), (h) and (i), Fla. Stat. (1985).
[2] § 921.141(6)(b) and (f), Fla. Stat. (1985).