529 So.2d 670 (1988)
Bobby Marion FRANCIS, Appellant,
v.
STATE of Florida, Appellee.
No. 71443.
Supreme Court of Florida.
June 2, 1988.
Rehearing Denied September 8, 1988.
*671 Larry Helm Spalding, Capital Collateral Representative, Office of the Capital Collateral Representative and Mark Evan Olive, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Charles M. Fahlbusch, Capital Collateral Coordinator and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
McDONALD, Chief Justice.
Francis, a prisoner under sentence of death, appeals the trial court's denial of his motion for postconviction relief. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution and Florida Rule of Criminal Procedure 3.850. We affirm the trial court's order.
In 1975 Francis tortured and then shot and killed a man whose informing against Francis resulted in Francis' arrest on a narcotics charge. Francis has been tried, convicted, and sentenced to death three times for this murder. During the first appeal, Francis filed a 3.850 motion alleging ineffective assistance of counsel. This Court relinquished jurisdiction to the trial court which granted the motion and ordered that Francis be retried. On appeal of the second conviction this Court found that, because he had been involuntarily absent during the exercise of peremptory challenges, Francis should be retried yet again. Francis v. State, 413 So.2d 1175 (Fla. 1982). This Court affirmed the third conviction and death sentence. Francis v. State, 473 So.2d 672 (Fla. 1985), cert. denied, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 908 (1986).
The governor signed Francis' death warrant in September 1987, with execution set for November 16, 1987. Francis then filed a 3.850 motion with the trial court. After an evidentiary hearing, the trial court denied relief, and Francis appealed to this Court. Because of the imminence of the execution, we granted a stay in order to study this case.
In his 3.850 motion Francis claimed that: 1) he had been penalized for going to trial rather than pleading guilty; 2) his trial counsel had rendered ineffective assistance by not discovering and presenting certain nonstatutory mitigating evidence during the penalty phase; 3) the state engaged in misconduct regarding a witness' (Charlene Duncan) testimony; 4) he had been denied his right to confront another witness (Deborah Wesley); and 5) the state attorney's office had a conflict of interest in prosecuting Francis because a previous state attorney had represented a witness against Francis while that attorney did criminal defense work.[1] The trial court summarily denied the third and fourth claims because they had been raised on *672 direct appeal. The court then held an evidentiary hearing on the other claims, after which it found them to have no merit and denied relief.
On appeal Francis argues that the trial court should have held an evidentiary hearing on the summarily denied claims and that the court should have vacated his death sentence and ordered a resentencing. We disagree.
This Court considered the claims regarding the witnesses against Francis on direct appeal. 473 So.2d at 674-75. They are, therefore, procedurally barred from consideration in postconviction proceedings. See Christopher v. State, 489 So.2d 22 (Fla. 1986). The trial court properly denied these claims in a summary fashion.
The trial court's finding no merit to the first and fifth claims  being penalized for going to trial and the prosecution's conflict of interest  is supported by competent, substantial evidence, and Francis has shown no credible reason for reversing the denial of relief. Moreover, these claims suffer from a procedural bar. This Court considered the former claim on direct appeal, 473 So.2d at 677, and the latter claim could and should have been raised on appeal.[2]
We now turn to the final claim, ineffective assistance of counsel. Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Francis must demonstrate both substandard performance by his trial counsel and prejudice caused by that substandard performance. Francis has shown neither.
Francis' first two juries recommended death by votes of twelve to zero. Counsel for his third trial made an impassioned, highly emotional argument to the jury,[3] which returned a recommendation of life imprisonment after deliberating for less than an hour. A jury's recommendation of life imprisonment is a strong indication of counsel's effectiveness. Lusk v. State, 498 So.2d 902, 905 (Fla. 1986) ("[T]he jury's recommendation cannot be alleged to have been produced by counsel's ineffectiveness."), cert. denied, ___ U.S. ___, 107 S.Ct. 1912, 95 L.Ed.2d 517 (1987); Buford v. State, 492 So.2d 355, 359 (Fla. 1986) ("Appellant's contention that his trial counsel rendered ineffective assistance of counsel during the penalty phase of the trial is repudiated by the fact that the jury recommended life in this case."); Douglas v. State, 373 So.2d 895, 896 (Fla. 1979) ("We do not consider meritorious to any degree the suggestion now made that trial counsel was `ineffective' because he failed to persuade the trial judge to follow rather than override the jury's recommendation."). See also State v. Bolender, 503 So.2d 1247 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987); Porter v. State, 478 So.2d 33 (Fla. 1985).
In testifying at the evidentiary hearing trial counsel stated: "Perhaps, in retrospect, I was negligent in some areas."[4] He went on, however, to say that he "did the best [he] could" and that he firmly believed, based on his experience with capital trials and his knowledge of the instant judge, that the trial judge would not sentence Francis to death. Counsel's effectiveness is obvious here, and Francis has not shown that he "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the *673 Sixth Amendment." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064.[5]
Current counsel, however, argues that trial counsel should have presented the currently tendered evidence in order to convince the trial judge not to override the jury or, in the alternative, to convince this Court to reverse the override. Even assuming, for the sake of argument, that trial counsel should have developed and introduced this evidence, Francis has not met the second part of the Strickland v. Washington test. He has not shown that his counsel's "performance actually had an adverse effect so severe that there is a reasonable probability that the results of the proceedings would have been different but for the inadequate performance." Blanco v. Wainwright, 507 So.2d 1377, 1381 (Fla. 1987).
Dr. Merikangas, a psychiatrist, interviewed Francis and concluded that he suffers from fetal alcohol syndrome and is, therefore, brain damaged and mentally defective, based primarily on Francis' facial characteristics. He admitted, however, that those characteristics were not exclusively attributable to fetal alcohol syndrome. He also concluded that Francis' reasoning ability was impaired. The doctor relied on Francis' personal history in assuming this, however, rather than testing Francis' ability to reason.
To rebut this witness, the state presented another psychiatrist, Dr. Mutter. Although Dr. Mutter did not interview Francis, he reviewed Dr. Merikangas' report as well as other records, documents, and affidavits relating to Francis' history. Based on transcripts of Francis' discussions with the court at his third trial, Dr. Mutter stated that Francis' behavior was "grossly inconsistent with somebody who is brain damaged" and that there is no conclusive evidence that Francis suffers from fetal alcohol syndrome.[6]
Francis' mother died when he was six, and her sister (his aunt) raised him and his sisters in a poor, black community. His aunt, youngest sister, and the ex-wife of his aunt's son testified at the evidentiary hearing. Although the ex-wife testified that the aunt's common law husband mistreated Francis, neither his aunt nor his sister said that. Not only is the testimony of these witness' inconsistent,[7] it deals with events remote in time from the instant homicide.[8] Francis was thirty-one when he committed this murder; that this evidence would be found to establish mitigating circumstances is merely speculative. Bolender; Lusk.
In denying the motion for postconviction relief the trial judge found that Francis did not suffer from fetal alcohol syndrome; that Mutter's, rather than Merikangas', testimony should be accepted; and that trial counsel's nonproduction of the currently tendered evidence did not rise to the level of ineffective assistance. The judge went on to state that, if this evidence had been presented at sentencing, it would not have altered Francis' sentence.[9] On appeal this Court affirmed the jury override and found the sentence to represent "a reasoned judgment based on the circumstances of the capital felony and the character of the offender after giving due consideration to the jury's recommendation." 473 So.2d at 677. The newly presented evidence does not alter that conclusion because it does *674 not create a reasonable probability that the outcome would have been different if it had not been omitted. Francis has failed to demonstrate that its omission prejudiced him.
Therefore, we affirm the trial court's denial of postconviction relief and dissolve the previously entered stay.
It is so ordered.
OVERTON, EHRLICH, SHAW and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
I cannot conclude, as the majority suggests, that the jury's life recommendation in this case excuses any and all of counsel's manifest and prejudicial deficiencies. Such a position means that what may have been a mere fluke at trial, see 473 So.2d at 676, now renders counsel's performance nonreviewable by this Court. Nor is this Court bound by the trial judge's observation that he would have sentenced appellant to death in any event because he did not believe the testimony presented at the 3.850 hearing. The question before us today is not whether appellant's mitigating evidence should be believed by us or any other specific judge, but whether there is any probability that a jury might have believed it to such a degree as to render "reasonable" the recommendation of life in prison that occurred at this trial. Thus, in light of our decision in Tedder v. State, 322 So.2d 908 (Fla. 1975), the majority's analysis totally misapplies the prejudice prong of the test established by Strickland v. Washington.
The record before us discloses that trial counsel, who had been involved in the defense of this case in some capacity since 1979, made virtually no effort to obtain mitigating evidence on behalf of his client. The only witnesses called in the case for mitigation, two jail guards who testified that appellant was a model prisoner, were summoned only when Francis himself asked for the court's intervention after the sentencing hearing had commenced:
As you all know, this is the third time I've been to trial in this case and at no time in the past have I ever had any character witnesses at any time during the penalty phase of this trial  of any trial, so what happens is at this time I wasn't able to, as you know, by me being incarcerated, I don't have access to the telephone to call my attorney at the spur of the moment to say I got this and this and such and such is the case.
... .
[D]ue to the fact that I'm fighting for my life, I'd like to request that if it's at all possible, the Court would allow me to do this and I, like I said, I haven't the faintest idea as to whether these people can be contacted at this moment, but I know that through Captain Farrington over at the County Jail, which he might even, himself, come as a character reference, that I would like to have these people subpoenaed or however you do this.
After hearing this plea, the trial court then instructed Francis to submit a list of names to a court officer, and ordered the officer to summon whomever from the list was available at that time.
When the two guards arrived, defense counsel examined them briefly and then rested. The record is devoid of any indication that Francis' trial attorney had contacted any similar witnesses, talked with his client about such witnesses, made any background investigation for the purpose of discerning mitigating evidence, or engaged in any factual preparation for the penalty phase. The thrust of counsel's closing argument in the penalty phase was the injustice of the death penalty and the need for Christian charity and forgiveness when judging others, and he mentioned only in passing the testimony of the jail guards. 473 So.2d at 676-77.
At the hearing below on Francis' motion to vacate, defense counsel also gave no indication that his failure to produce any witnesses or evidence through his own efforts was a strategic decision. Instead, he averred that time constraints required him to make the guilt phase the top priority:

*675 Q. Now, coming to the sentencing phase, looking back on it, you stated that if you had  possibly, if you had had more time, you would have done more or possibly done more thorough investigation?
A. Uh-huh.
Q. Now, did you have to budget your time, and did you have to set priorities for yourself?
A. In this kind of case, you are always setting priorities.
I would find it hard to believe that you cannot set priorities.
Q. You set those priorities based on your best judgement [sic] on what had to be done?
A. I don't know what the best judgements [sic] are.
Perhaps in retrospect, I was negligent in some areas.
Counsel also acknowledged that he made no investigation of Francis' traumatic childhood experiences, which included (1) an alcoholic mother who drank large amounts when pregnant with Francis, resulting in fetal alcohol syndrome, abnormal physical characteristics and permanent brain damage, (2) a history of poverty and neglect growing up in Miami's Liberty City, (3) witnessing the death of his mother on a bus en route to Miami when he was only six years old, and (4) physical abuse as a child.[1] In reply to another question, counsel agreed that testimony of a capital defendant's impoverished youth in an abusive environment could mean the difference between a sentence of life and death.[2] Nor did counsel attempt to obtain expert testimony, presented at the 3.850 hearing below, that Francis suffered from a reduced capacity to appreciate the criminality of his conduct caused at least in part by fetal alcohol syndrome and the resulting brain damage.
In gauging ineffectiveness, the United States Supreme Court in Strickland required that a defendant show that trial counsel, first, "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. at 2064. Second, a defendant must also show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. That is, the prisoner must prove actual prejudice, which consists of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. A "reasonable probability" consists, not of an absolute certainty, but of "a probability sufficient to undermine confidence in the outcome." Id.
Applying these general principles to the facts in Strickland, the Court found that the failure to present certain mitigating evidence during the penalty phase of a Florida trial was not prejudicial ineffectiveness. The Strickland Court was persuaded to this conclusion by the weak nature *676 of the mitigating evidence available, id. at 699-700, 104 S.Ct. at 2070-2071; the defendant's confession to the crime, pleas of guilty on all charges, waiver of a jury trial and waiver of his right to a sentencing jury, id. at 672, 104 S.Ct. at 2056; and the fact that counsel's limited presentation of mitigating factors arguably was in his client's best interests. Id. at 699-700, 104 S.Ct. at 2070-2071. The Strickland Court found that trial counsel had made a valid strategic choice to limit his penalty-phase presentation to a single mitigating factor, extreme emotional distress. Id. at 699, 104 S.Ct. at 2070. Moreover, the Court also noted that the presentation of other potentially mitigating evidence would only have opened the door for the state to present a devastating rebuttal that could have jeopardized the entire case for mitigation. Id. The Court ultimately concluded that the aggravating circumstances were so overwhelming and guilt so certain that none of the relatively weak mitigating evidence would have outweighed them, even if all had been presented and believed. Id. We note that Strickland did not involve a jury override. See id. at 672, 104 S.Ct. at 2056.
In the wake of Strickland, the Eleventh Circuit has had several opportunities to review claims of ineffective assistance arising from counsel's performance in the penalty phase of a Florida capital trial. In King v. Strickland, 714 F.2d 1481, 1491 (11th Cir.1983), vacated and remanded, 467 U.S. 1211, 104 S.Ct. 2651, 81 L.Ed.2d 358, adhered to on remand, 748 F.2d 1462 (11th Cir.1984), the Eleventh Circuit noted:
Although this Court apparently has never held counsel ineffective in a capital case solely because of failure to present mitigating evidence, see [Stanley v. Zant, 697 F.2d 955, 964 (1983)], it has on a number of occasions cited this failure as one factor suggesting ineffectiveness. See Young v. Zant, 677 F.2d 792, 799 (11th Cir.1982); Kemp v. Leggett, 635 F.2d 453 (5th Cir.1981); Mason v. Balcom, 531 F.2d 717, 724 (5th Cir.1976).
In King, unlike the present case, the jury had recommended death. Id. at 1485.
Apparently on only two occasions has the Eleventh Circuit dealt with a claim of ineffectiveness arising from a Florida capital sentencing in which the trial judge overrode the jury recommendation of life. In the first of these, the Eleventh Circuit found prejudicial ineffectiveness, and in the second, it remanded for a hearing to determine that issue.
The first such case, issued before Strickland was decided but subsequently reaffirmed, was Douglas v. Wainwright, 714 F.2d 1532 (11th Cir.1983), vacated and remanded, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874, adhered to on remand, 739 F.2d 531 (11th Cir.1984), cert. denied, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). There, the Eleventh Circuit found prejudicial ineffectiveness when counsel both failed to investigate or present mitigating evidence, and told the sentencing judge outside the jury's presence that his client had "not been a good boy" and that no mitigating evidence existed. 714 F.2d at 1557.
In Porter v. Wainwright, 805 F.2d 930 (11th Cir.1986), cert. denied, ___ U.S. ___, 107 S.Ct. 3195, 96 L.Ed.2d 682, and cert. denied, ___ U.S. ___, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987), however, the Eleventh Circuit made it plain that the jury override in that case could constitute the additional element supporting a finding of prejudicial ineffectiveness. In Porter, the Eleventh Circuit remanded for an evidentiary hearing to determine why counsel had failed to present evidence of petitioner's difficult home environment, mental illness, caring attitude toward his family and hard work at school. 805 F.2d at 936 n. 6. Citing this Court's decision in Tedder,[3] the Eleventh Circuit made the following observation:
In light of the very strict standard that applies in [Florida] jury override cases, and in light of the fact that the sentencing judge viewed this case as one without any mitigating circumstances when in *677 fact, assuming Porter's allegations to be true as we must in this posture, there were mitigating circumstances which cannot be characterized as insubstantial, our confidence in the outcome  the outcome being the trial judge's decision to reject the jury's recommendation  is undermined... . We cannot say that, with Porter's proffered evidence in hand, no reasonable person could differ as to the appropriate penalty.
805 F.2d at 936 (citation omitted). The Eleventh Circuit further noted the importance of the jury override by comparing Porter to its decision in a non-override case in which the court had found the defendant prejudiced by the failure of counsel to present mitigating evidence similar to that in Porter.[4] If Porter's facts were true and valid mitigating evidence existed, the Eleventh Circuit concluded that confidence in the outcome necessarily is undermined because of the jury override. 805 F.2d at 936 & n. 6.
I find this conclusion equally applicable under the law of Florida. Claims of ineffectiveness arising from a Florida capital sentencing hearing in which the judge has overridden a jury recommendation of life should be subject to greater scrutiny because of the strong presumption in favor of that recommendation created by Tedder.
First, the trial judge is bound by Tedder to adhere to the jury recommendation unless virtually no reasonable person could have reached that result. The presence of valid mitigating factors is the decisive factor in determining whether a jury's recommendation of life is reasonable. Fead v. State, 512 So.2d 176 (Fla. 1987); Ferry v. State, 507 So.2d 1373 (Fla. 1987); Amazon v. State, 487 So.2d 8, 13 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986). Under Tedder and the sentencing statute, the trial court must weigh independently the aggravating and mitigating factors and can override the jury only based on written findings detailing this weighing process. § 921.141(3), Fla. Stat. (1987). The failure to present even a single valid mitigating factor thus may irreparably prejudice the defendant by skewing the weighing process in favor of the aggravating factors.
Second, this Court has strictly applied the Tedder standard in its review of jury overrides. We have not hesitated to reverse jury overrides that lay beyond the trial court's discretion because of the presence of valid mitigating evidence upon which the jury recommendation reasonably could have been based. E.g., Fead; Ferry; Amazon. Thus, the failure to present such mitigating evidence at the sentencing hearing results in an unreliable sentence that is not susceptible of correction on appeal. If only a weak case for mitigation is found in the record, this Court has been far more inclined to sustain the override based on the assumption that no other mitigating factors existed.
Applying these principles to the case at hand, I would hold that the trial court misconceived its role in considering this motion. In its findings, the trial court rejected as a matter of fact that appellant suffered from fetal alcohol syndrome, and summarily denied all of appellant's claims.[5] *678 Under Strickland, the trial court should have confined its review to three questions: (1) whether admissible testimony of any noncumulative mitigating factor was available to trial counsel through due diligence; (2) if so, whether counsel's failure to introduce that testimony was a strategic decision or justifiable on any other grounds; and (3) if not, whether the failure to introduce the testimony prejudiced appellant within the meaning of Strickland.
As to the first question, it is clear that the mitigating testimony in issue here was noncumulative and available through due diligence; and it undoubtedly would have been admissible under the requirements of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and its progeny, see, e.g., Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and the relaxed evidentiary standards of a capital sentencing. See § 921.141(1), Fla. Stat. (1985).
Second, this appellant unquestionably has met the deficiency prong of the Strickland analysis. Counsel clearly was under a duty to develop a case in mitigation, and to prepare adequately toward that end. Strickland, 466 U.S. at 686-87, 104 S.Ct. at 2063-64; King, 714 F.2d at 1491; Zant, 697 F.2d at 963. It is evident upon this record and by counsel's own admissions that he neither consulted with his client about, nor investigated potential sources of, mitigating evidence. Counsel himself agreed that some of the evidence he failed to present could have been crucial in obtaining a life sentence over a death sentence. The mere fact that the jury recommended life does not excuse this deficiency.
Third, I also must conclude that appellant has demonstrated prejudice within the meaning of Strickland.[6] Upon this record, I cannot say that the trial judge under Tedder lawfully could have overridden the jury recommendation of life had counsel not been deficient. Nor is it this Court's purview on appeal to second-guess what the result would have been had this deficiency not occurred. Our exclusive task is to determine if confidence in the outcome has been undermined such that it is probable this sentence would have been different. That is, we must determine whether a reasonable jury that heard all the available mitigating evidence could have returned a recommendation of life in prison. In deciding this question we also are required to consider whether, in light of counsel's deficiency, the penalty may be either non-proportional, see, e.g., Fead; Proffitt v. State, 510 So.2d 896 (Fla. 1987); Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986), or may violate the need for reliability required by the federal case law. See, e.g., Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings; Lockett.
I conclude that this probability exists. Had Francis' counsel presented and argued all the available evidence in mitigation, he might have established several valid mitigating factors in support of the jury's recommendation. The sheer weight of this evidence alone may have been sufficient to compel a different outcome, especially in light of the federal and state law governing mitigating factors. For instance, evidence of appellant's unstable family environment, a violent childhood, alcoholic parents and emotional disturbance unquestionably constitute valid mitigating factors. Eddings, 455 U.S. at 115, 102 S.Ct. at 877. Impairment caused by appellant's alleged brain damage or any other factor is recognized by Florida statute as a mitigating factor. § 921.141(6)(f), Fla. Stat. (1985). Similarly, appellant's lack of a prior criminal record, recognized in mitigation by the court below, also is a statutory mitigating factor. § 921.141(6)(a), Fla. Stat. Moreover, the United States Supreme Court has said without qualification that an appellant's status of being a model prisoner or the potential for future good behavior in prison *679 is a mitigating factor. Skipper. Accord Valle v. State, 502 So.2d 1225 (Fla. 1987).
All of these factors, presented together and argued in the sentencing phase, might have been sufficient to have compelled the trial court to accede to the jury recommendation under Tedder, under the doctrine of proportionality, or under the federal requirement of reliability; or it may have prompted this Court to reverse the jury override on direct appeal for any of the same reasons. Accordingly, I conclude that confidence in the outcome has been undermined within the meaning of Strickland, and I thus would reverse the court below, vacate the sentence of death and order appellant resentenced.
KOGAN, J., concurs.
NOTES
[1] At Francis' first trial Jeff Gautier represented Opal Lee, Francis' co-defendant. By Francis' second trial Gautier had been elected state attorney for the 16th circuit. The governor assigned prosecution of the retrial to the state attorney of the 17th circuit to avoid any appearance of conflict of interest on Gautier's part because Lee testified against Francis at the second trial. Gautier was no longer state attorney at the time of Francis' third trial, and Lee did not testify at that trial, so the 16th circuit's state attorney again prosecuted the case.
[2] Thus, the trial court need not have held an evidentiary hearing on these claims. We encourage trial courts to hold evidentiary hearings on postconviction claims when those courts deem such action warranted, however, because their findings of fact are valuable aids to reviewing courts.
[3] Francis v. State, 473 So.2d 672, 676-77 (Fla. 1985), cert. denied, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 908 (1986).
[4] This statement has little meaning or value under Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984): "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."
[5] An attorney who testified on Francis' behalf as to the standard of performance by trial counsel conceded that Francis' lawyer obtained a good result by receiving a jury recommendation of life imprisonment.
[6] The doctors agreed that Francis' IQ is within the normal range.
[7] The ex-wife also said that Francis got less of everything (food, clothes, etc.) than other family members. The aunt and sister contradicted this. According to them, Francis was treated the same as his siblings.
[8] The ex-wife and the son were divorced in 1969, and she lost contact with the family then. The aunt testified that Francis was already out on his own in 1965 (when he was 20 or 21 years old). This murder occurred in 1975.
[9] The judge who heard this motion presided at Francis' third trial. Who, better than he, could determine whether failure to introduce this evidence prejudiced Francis sufficiently to meet the Strickland v. Washington test? Postconviction relief motions are not abstract exercises to be conducted in a vacuum, and this finding is entitled to considerable weight.
[1] The following colloquy occurred:

Q. I will ask you specifically.
Were you able to do a background investigation into Mr. Francis' childhood up to, say, age 14, 15, in order to prepare for providing information about his youth to the capital sentencing jury or to the Judge?
A. Other than the bits and pieces that came together during the trial, I don't think I pursued that very much.
Q. Why is that?
A. I don't really recall.
I just probably was wrapped up in the evidentiary matters which were introduced at the first trial, which went on for several days.
The second trial, which went on for, I think it was in excess of a week, and there were certain time constraints and perhaps I should have.
[2] The following colloquy occurred:

Q. Right.
In your experience, background preparing for and conducting felony trials, capital trials, do you believe that it would be helpful or unhelpful for a capital sentencing jury to hear information about a person's childhood if that childhood was abusive, poverty-ridden, et cetera?
A. The personal knowledge I have of that particular issue goes to a case where I was requested to represent a gentleman on death row, perhaps two years ago, in Federal Court, a gentleman by the name of William Middleton.
I came to understand that that is a very important piece of evidence or pieces of evidence that can deal with the issue of the life sentence or the death sentence.
[3] In Tedder and its progeny, we have held that the judge may override the jury recommendation of life only if virtually no reasonable person could reach that result. Tedder v. State, 322 So.2d 908 (Fla. 1975).
[4] Thomas v. Kemp, 796 F.2d 1322 (11th Cir.), cert. denied, 479 U.S. 996, 107 S.Ct. 602, 93 L.Ed.2d 601 (1986) (arising from a Georgia murder trial).
[5] The trial court made the following findings:

THE COURT: Court having carefully listened to the testimony introduced in this case and reviewed the Exhibits, make the following findings of fact.
Court accepts the testimony of Dr. Mutter.
Rejects the testimony of Dr. Maracangas in those parts where there is a conflict.
The Court finds as a matter of fact that the Defendant does not, did not suffer from fetal alcohol syndrome.
The Court finds further that counsel, Mr. Zenobi's testimony to the effect that this Court was not vindictive in any respect is, in fact, the facts of this case.
Court finds that the non-production of witnesses concerning the gentleman's environment, et cetera, does not rise to the point of ineffective assistance of Counsel.
The Court desires and invites the Supreme Court of Florida to review these findings and conclusions of law.
That the Motion for Rule 3 [sic] is denied.
[6] I find the present case clearly distinguishable from Strickland because of the jury override, the substantial nature of the mitigating evidence, the fact that appellant did not confess or waive his rights, and the lack of any discernible strategic reason for counsel's actions.