# STATE OF FLORIDA v GARCIA

## Case No. 86-12910B

Eleventh Judicial Circuit, Dade County

December 8, 1988

### APPEARANCES OF COUNSEL

**Sally Weintrabu,** Assistant State Attorney, for plaintiff.
**William Surwieck,** for defendant.

### OPINION OF THE COURT

FRED MORENO, Circuit Judge.

## SENTENCING ORDER

THIS CAUSE comes before the Court for sentencing of the defendant, ROLANDO GARCIA, following a conviction by a jury of four counts of First Degree Murder.

On November 17, 1988, the jury after considering the previous evidence and testimony and hearing argument from both the State and the defense on the applicable aggravating and mitigating factors under *FS* § 921.141 (1987) and non-statutory mitigating factors; i.e. *Lockett v Ohio,* 438 U.S. 586 (1978), deliberated; and by votes of 10 to 2 as to Count II, 8 to 4 as to Count XIV, 10 to 2 as to Count XV returned an advisory sentence recommencing imposition of the death penalty. As to Count I the jury recommended life. The Court has given these recommendations serious consideration and great weight.

On December 6, 1988, the Court heard further testimony and argument presented by the defense and the State.

After carefully considering and weighing the jury recommendation, as well as independently reviewing the evidence in light of the provisions of *FS* § 921.141 (1987), the Court concludes that the aggravating factors in this case outweigh any possible mitigating circumstances, and does hereby impose the sentence of death upon the defendant, RO-LANDO GARCIA, as to Counts I, II, XIV and XV of the Indictment, the First Degree Murders of MARIO AMADOR, ROBERTO ALFONSO, RAMON ALVERO and DAISY RICARD. The Court makes the following findings of fact, pursuant to *FS* § 921.141(3), upon which it has based its sentence of death.

PART A. The recommended sentence for the murder of MARIO AMADOR was life.

As recently stated in *Torres-Arboledo v State,* 524 So.2d 403 (Fla. 1988):

Under Florida's capital sentencing scheme, a jury's recommendation of life is entitled to great weight. Therefore, an override sentence of death will not be upheld unless the facts justifying a death sentence are so clear and convincing that no reasonable person could differ as to its appropriateness. *Tedder v State,* 322 So.2d 908 (Fla. 1975); *Brookings v State,* 495 So.2d 135 (Fla. 1986). As recently noted in *Ferry v State,* 507 So.2d 1373 (Fla. 1987), the *Tedder* standard has been "consistently interpreted by this Court to mean that when there is a reasonable basis in the record to support a jury's recommendation of life, an override is improper." 507 So.2d at 1376. In other words, when there are valid mitigating factors discernible from the

21

record which reasonable people could conclude outweight the aggravating factors proven in a given case, an override will not be upheld. *See, Echols v State* 484 So.2d 568 (Fla. 1985), cert. denied, 107 S. Ct. 241 (1986).

This Court overrides the jury's recommendation of life based on the following aggravating circumstances.

1. The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person. *FS § 921.141(5)(b).*

The Court finds that the defendant, ROLANDO GARCIA, was previously convicted for the First Degree Murders of Roberto Alfonso, Ramon Alvero and Daisy Ricard by jury verdicts and adjudications of guilt. Although these convictions were contemporaneous with the defendant's for the First Degree Murder of Mario Amador, the Court finds these convictions satisfy the proof required for this aggravating circumstance. *See King v State,* 390 So.2d 315, 320 (Fla. 1980); *LeCroy v State,* — So.2d — (Fla. 1988) (October 20, 1988); *Correll v State,* 523 So.2d 562 (Fla. 1988). This circumstance should be given more weight since the murders occurred during two criminal episodes separated by three months.

2. The capital felony was committed for pecuniary gain.

There is clear and convincing evidence beyond a reasonable doubt that the murder of Mario Amador was committed for pecuniary gain, including but not limited to the armed robbery of Mario Amador as convicted in Count III. The diary entry of $10,000 and the execution style of the killing of Mario Amador further support this finding. In addition, witness John Heggerty testified that he stated to "watch out for Rolly because he is going to rip you off." Mr. Heggerty told witness Carlos Ribero that instead of money in the suitcase the defendant had shredded paper in order to purchase cocaine.

3. The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.

The testimony of witnesses Jeggerty and Ribera referred to above support this finding. *See Hardwick v State,* 521 So.2d 1071 (Fla. 1988).

4. The commission of this capital felony was while the defendant was engaged in the commission of the robbery of Mario Amador.

The Court made the following determination as to any mitigating circumstances:

22

1. Whether the defendant has no significant history of prior criminal activity.

The defendant argued that the first mitigating circumstance of no significant history of prior criminal activity is applicable. This argument is undermined by the testimony of John Heggerty and George Girling that the defendant had done cocaine kilo deals. While the defendant testified that this testimony was not true, it is clear that the jury disbelieved him, and this Court does likewise. At any rate, even if the defendant's testimony on his prior criminal activity is believed, his admission that he sold and used relatively small amounts of cocaine and marijuana would negate a finding of no significant history of prior criminal activity.

2. Whether the crime for which the defendant is to be sentence was committed while he was under the influence of extreme mental or emotional disturbance.

There is no evidence of this mitigating circumstance. The defendant denied any involvement in this or any other murder.

3. Whether the victim was a participant in the defendant's conduct or consented to the act.

The Court finds that this mitigating circumstance is inapplicable despite the fact that victim Mario Amador was a drug dealer. *See Bolender v State,* 422 So.2d 833 (Fla. 1982). Although the jury apparently recommended life as to the Amador killing because Amador was a drug trafficker, such factor is not a legally reasonable mitigating circumstance.

4. Whether the defendant was an accomplice in the offense for which he is to be sentenced but the offense was committed by another person and the defendant's participation was relatively minor.

There is no evidence as to this mitigating circumstance. The defendant was a major participant in this murder. There is evidence of two guns being used against AMADOR and ALFONSO. Furthermore witnesses Heggerty and Ribera testified as to this defendant's plan to rob Mr. Amador.

5. Whether the defendant acted under extreme duress or under the substantial domination of another person.

Although the defendant testified as to his friendship for Manuel Pardo there is no evidence of duress or substantial domination of Manuel Pardo or anyone else.

6. Whether the capacity of the defendant to appreciate the criminal-

23

ity of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

There is no evidence as to that circumstance based on the defendant's own testimony.

7. The age of the defendant at the time of the crime.

The defendant was 23 years old and supporting himself. The defendant's age in this case is not a mitigating circumstance. *Cooper v State*, 492 So.2d 1059 (Fla. 1986).

8. Any other aspect of the defendant's character, including lack of prior arrest record, and any other circumstance of the offense, including admissions to crimes charged in the indictment for which he stands convicted.

The defendant admitted his involvement in the credit card offenses and was found guilty of them in Counts XVII, XVIII, XIX, XX, XXI, XXII, XXIII and XXIV. The defendant's testimony as it relates to these offenses was presented along with his denial of the other offenses. The court considers this factor but does not find this a legally sufficient mitigating circumstance and even if it were it does not outweight the aggravating circumstances found in this case.

WHEREFORE, the Court overrides the jury's recommendation of life finding that the sole mitigating circumstance, the role as a drug dealer by victim AMADOR, if valid at all, is outweighed by the aggravating circumstances listed.

PART B. The jury recommended a death sentence for the murder of ROBERTO ALFONSO by a vote of 10 to 2 as to Count II. The Court sentence the defendant to death based on the following aggravating circumstances.

1. The defendant was previously convicted of another capital felony.

The evidence and reasoning as to this factor is the same as enunciated in Part A of this order relating to the murder of MARIO AMADOR.

2. The capital felony was committed for the purpose of avoiding or preventing a lawful arrest.

The evidence establishes that ROBERTO ALFONSO, co-victim MARIO AMADOR'S roommate, was in the wrong place at the wrong time. The defendant planned to rob and murder AMADOR and did so. Unfortunately for ALFONSO, he witnessed these crimes and had to be eliminated, if the defendant was to avoid detection. This need to eliminate Alfonso was clearly the dominant motive for his murder.

24

Thus, the murder was aggravated. *See Griffin v State,* 414 So.2d 1025 (Fla. 1982).

3. The capital felony was committed while the the defendant was engaged in the commission of a robbery of MARIO AMADOR.

The Court considered all possible mitigating circumstances discussed in Part A of this order and finds that none apply, except lack of conviction record. Death is reserved for only the most aggravated of murders and this witness elimination execution is one of those killings. This defendant is therefore sentenced to death, as was his co-defendant, Manuel Pardo, for the murder of Roberto Alfonso.

PART C. The Jury recommended death by a vote of 8 to 4 for the death of RAMON ALVERO. The Court imposes the death penalty for the following reasons:

1. The defendant was previously convicted of other capital felonies.

The convictions for the murders of Amador, Alfonso, and Ricard establish this aggravating circumstance for the murder of RAMON ALVERO. (See Part A of Order for legal basis).

2. The capital offense was especially heinous, atrocious and cruel.

The evidence establishes that Alvero was shot repeatedly while sitting defenseless in his car. According to the medical examiner, he was first shot in his right side and right upper back. These shots, while debilitating, were not fatal. The medical examiner so testified because of the large amount of blood which formed around those wounds, which indicated that Alvero's heart remained pumping after these shots were fired. While Alvero was suffering from the effects of these initial shots, he was shot three times in the head, and was thus put out of his misery. These facts establish that this murder was especially heinous, atrocious and cruel. *Hargrove v State,* 366 So.2d 1 (Fla. 1978); *Troedel v State,* 462 So.2d 392 (Fla. 1984); *Squires v State* 450 So.2d 208 (Fla. 1984).

3. The murder was committed in cold, calculated, and premeditated manner without any pretense of moral or legal justification.

It would be difficult to imagine a more cold, calculated and premeditated murder than the murder of Ramon Alvero by the defendant and Manuel Pardo. For at least three weeks prior to the murder, the defendant and Pardo talked of their intent to murder Alvero. "We're sick of 'El Negro'," they told Ribero. They went to Alvero's house on at least three occasions, with Carlos Ribera, with the expressed purpose of murdering Alvero, but were unable to find him home. They even tried to ambush Alvero by attempting to contact him through his

25

beeper. They were finally able to find Alvero in an opportune place and time and murdered him in cold blood. After doing so, the defendant showed Ribera a pictured of the murdered Alvero and told him that he and Pardo had taken care of business. This evidence overwhelming established that the murder of Alvero was cold, calculated and premeditated. *See Swafford v State* — So.2d — (Fla. 1988) (Case No. 68,0009, opinion filed September 29, 1988); *Lamb v State* — So.2d — (Fla. 1988) (Case No. 70,369, opinion filed September 1, 1988); and *Hardwick v State,* 521 So.2d 1071 (Fla. 1988).

The Court considered all possible mitigating circumstances, and finds none applicable, including the fact that ALVERO was a drug dealer. (See PART A of Order). Although Alvero was a drug dealer, he certainlydid not participate in the conduct or consent to the act which resulted in his murder. The statutory mitigating circumstance that the victim was a participant in the defendant's conduct or consented to the act is, therefore, inapplicable. *Bolender v State, supra.* Even if Alvero's status as a drug dealer, could arguably be found to be a non-statutory mitigating circumstances, the Court finds that such mitigating circumstance does not outweight the three clearly established aggravated circumstances. The jury so found when they recommended the death penalty by a vote of 8 to 4 for the murder of RAMON ALVERO. Since there is clearly a reasonable basis for this recommendation it is being followed.

PART D. The jury recommended death by a vote of 10 to 2 for the murder of DAISY RICARD.

The aggravating circumstances which support the imposition of the death penalty are as follows:

1. The defendant was previously convicted of other capital felonies. (See PARTS A, B and C of this Order).

2. The Capital felony was committed for the purpose of avoiding or preventing a lawful arrest.

As with ROBERTO ALFONSO, MS. RICARD was tragically in the wrong place at the wrong time. She was murdered because she was present when the defendant and Pardo murdered ALVERO and her elimination as a witness was necessary so they could avoid detection. *See Griffin v State, supra; Correll v State, supra* and *Hooper v State, supra.* Indeed, the evidence establishing this aggravated circumstance is even stronger than for the murder of ALFONSO because the defendant and Pardo put RICARD in the trunk of a car and drove her to an empty field where they dumped her. In *Routly v State,* 440 So.2d 1267

26

(Fla. 1983) the Court held that there was no other logical reason for such conduct other than to prevent detection. As in *Routly,* the defendant has not even attempted to assert any other explanation for this behavior.

3. The capital felony was especially heinous, atrocious and cruel.

As with the murder of Alvero, the testimony of the medical examiner establishes that Ricard suffered debilitating gun shots to her hip and leg before she was fatally shot in the head. The murder of Ricard was even more tortuous than the murder of Alvero because, in addition to suffering non-fatal but debilitating gun shot wounds, Ricard suffered severe head injuries before she was fatally shot. These head injuries were consistent with being run over by a car. Such a murder was unquestionably heinous, atrocious, and cruel.

The Court considered all the mitigating circumstances previously discussed and finds none applicable and thereby sentences defendant GARCIA to death for the specially cruel and wicked murder of DAISY RICARD.

All 4 sentences of death are to be consecutive to each other.

The Court further finds as sufficient written reasons to deviate upward from the guidelines, the capital felonies for which he had been convicted. *See State v McPhaul,* 496 So.2d 1009. WHEREFORE, the Court on Count III, the Robbery of MARIO AMADOR, sentences the defendant to 40 years, to be run consecutively to the death sentences.

The sentences for the credit card crimes are as follows:

Counts XVII, XVIII and XIX, the April 2, 1986 incident, to (5) five years each concurrent with each other and consecutive to the death sentences and the 40 years for Count III.

Counts XX, XXI and XXIII, the April 8, 1986 incident, to (5) five years concurrent with each other but consecutive to the death sentences and all the above sentences of (5) five years and the 40 years.

Counts XXIII and XXIV, another April 2, 1986 incident, to (5) five years each concurrent with each other but consecutive to the above listed sentence and the death sentences.

The total sentence is 4 death sentences with 55 years consecutively for the robbery of MARIO AMADOR and the credit card crimes (Counts 17-24).

DONE and ORDERED in Open Court this 8th day of December, 1988.