456 So.2d 444 (1984)
Isaac Floyzell THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 63398.
Supreme Court of Florida.
September 6, 1984.
*445 Simson Unterberger, Tampa, for appellant.
Jim Smith, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
SHAW, Justice.
Appellant Thompson appeals from his conviction of first-degree murder and from the trial judge's imposition of the death sentence following the jury's recommendation of life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, but vacate the death sentence and remand to the trial court for imposition of a sentence of life imprisonment as recommended by the jury.
In the early morning hours of 10 September 1982, Robert Kelly, a gas station attendant, was killed by a shotgun blast. Appellant and two female companions (Hicks and Johnson) were charged with first-degree murder and attempted robbery. Hicks and Johnson were permitted by the state to plead guilty to reduced charges. They testified at appellant's trial that they were with appellant during the night and early morning hours preceding the murder, and that they accompanied him in his car to the vicinity of the murder. They also testified that Hicks, following appellant's instructions, had driven to the station and bought a small amount of gas, paying with a large bill in order to determine the location of the attendant's money. Hicks testified that she returned on foot with appellant to the gas station and that appellant was armed with a shotgun. Upon arrival, appellant demanded money from the victim, whereupon the victim stated that he had no money, laughed, and raised a chair in front of himself. At that point, appellant fired the shotgun, killing the victim, and appellant and Hicks fled the scene without consummating the robbery. Johnson testified that she remained in the car as the getaway driver, that she heard the shotgun blast but could not see the murder, and that appellant and Hicks returned quickly thereafter.
*446 Three other witnesses (Presley, Woodard, and Tolliver) testified that in the hours preceding the murder they had discussed robbing the gas station with appellant, and had surveyed the proposed crime scene, but had abandoned the idea. Presley and Woodard testified that appellant told them later that he had killed the victim. All three witnesses testified for the state as part of plea bargains on other unrelated charges. Another witness (Williams) testified that he had been with appellant, Hicks, and Johnson earlier in the night and had discussed robbing the station, but he had left the group hours before the murder and attempted robbery. Williams admitted that he expected to receive assistance from the prosecutor on an unrelated armed robbery charge because of his testimony.
A police officer testified that he had chased appellant in a car several days after the murder, but appellant had abandoned his car and escaped on foot. However, a shotgun with an expended shell found in the car was linked to appellant by witnesses, and a weapons expert testified that the shotgun and the expended shell were consistent with the victim's fatal wound. Appellant presented no evidence during the guilt phase.
We note initially that appellant raises no issues concerning the guilt phase or the correctness of his conviction. In response to questioning at oral argument, appellant's counsel stated that in his professional opinion there were no issues in the guilt phase worthy of appeal and that he chose not to contest the conviction lest such weaker or frivolous issues detract from meritorious issues concerning the sentencing phase. Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). We have, nevertheless, reviewed the conviction as required by section 921.141(4), Florida Statutes (1981), and Florida Rule of Appellate Procedure 9.140(f). We find no reversible error and that the evidence of guilt was overwhelming. We affirm the conviction.
Appellant argues four issues. The first is that the trial court erred in finding that a prior conviction of resisting arrest with violence was an aggravating circumstance in accordance with section 921.141(5)(b), Florida Statutes (1981). Essentially, appellant argues that resisting arrest with violence is not necessarily confrontational or life-threatening, that it carries a less severe penalty than other felonies involving violence, and, without proof of a violent resistance should not have been considered as an aggravating circumstance. There is no merit in appellant's argument. Resisting arrest with violence is on its face a felony involving the use or threat of violence to the person, and the judge and jury may properly consider it as an aggravating circumstance. There is no requirement that the state go behind the conviction to show the particulars of the conviction.
Appellant next argues that the trial court erred in finding that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(i), Fla. Stat. (1981). In the sentencing proceeding the trial court reasoned that appellant's decision to murder the victim, as opposed to fleeing the scene after being told there was no money, was an aggravating factor within the purview of the statute. We disagree. No evidence was produced to set the murder apart from the usual hold-up murder in which the assailant becomes frightened or for reasons unknown shoots the victim either before or during an attempt to make good his escape. None of the numerous witnesses testified or even suggested that the discussions they held with the appellant concerning the robbery contemplated the murder of the station attendant. Dr. Merin, the examining psychologist, testified that an individual falling within appellant's I.Q. range functions at a very primitive level, but is capable of behaving in a manner which protects his survival needs. Consequently, he could and would react impulsively, non-reflectively, insensitively, and dangerously. Even with this insight, we can only speculate as *447 to why appellant chose to fire the shotgun. For the purpose of sentencing, the evidence does not prove beyond a reasonable doubt the heightened degree of premeditation, calculation, or planning which we have consistently held is required in order to find this aggravating circumstance. Cannady v. State, 427 So.2d 723 (Fla. 1983); Mann v. State, 420 So.2d 578 (Fla. 1982). Contrast the present case with cases where we have held the aggravating circumstance was proven beyond a reasonable doubt: O'Callaghan v. State, 429 So.2d 691 (Fla. 1983); Middleton v. State, 426 So.2d 548 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983); Hill v. State, 422 So.2d 816 (Fla. 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). We hold that the trial court erred in finding the murder was committed in a cold, calculated, and premeditated manner without any pretense of legal or moral justification.
Appellant's third and fourth issues are that the trial court erred in overriding the jury's recommendation of life and by failing to give due consideration to the jury's recommendation. Concerning the latter issue, appellant urges that the short period of time, approximately fifteen minutes, between the receipt of the jury's recommendation of life imprisonment and the trial judge's imposition of the death sentence indicate that the judge failed to properly consider the jury's recommendation. We disagree. Under Florida's capital punishment law the final responsibility for sentencing is the judge's. White v. State, 403 So.2d 331 (Fla. 1981); cert. denied, ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). Further, there is no legal reason why the trial judge may not deliberate on sentencing concurrently with the jury. King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981). We agree, however, that under the circumstances of this case, the trial judge erred in overriding the jury recommendation. Even though a jury recommendation of either life imprisonment or imposition of the death penalty is only advisory, an override of either recommendation requires written findings by the trial judge. State v. Dixon, 283 So.2d 1, 8 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Two years after Dixon, we reiterated and elucidated our concern over jury overrides by holding that
[a] jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). In the years since we have not wavered from the Tedder test and have consistently applied it to the facts and circumstances of cases on review where the trial judge has overridden a jury recommendation of life imprisonment and imposed the death penalty. McCampbell v. State, 421 So.2d 1072, 1075 (Fla. 1982), and cases cited therein. Here, there remained two aggravating circumstances, sections 921.141(5)(b) and (d), which the jury and the judge could properly consider. The judge found no mitigating circumstances. From our review of the record we find that there were mitigating circumstances on which the jury could have properly relied and which could have reasonably persuaded the jury to advise life imprisonment. We note first the uncontradicted testimony of Dr. Merin, an expert psychologist, as to appellant's mental capacity and attendant personality characteristics. Dr. Merin testified that appellant had an impaired personality and an IQ between 50 and 70, which placed him clinically in the mildly retarded range. Dr. Merin described appellant as "street smart," with an egocentric, protective *448 and impulsive personality, primarily motivated by personal survival, one who would act immediately and destructively if he sensed his personal survival was at risk, but who was unable to reason abstractly. We do not suggest that appellant's mental impairment rises to the level of obviating his knowledge of right and wrong. Indeed, Dr. Merin testified that appellant knew right from wrong. Nevertheless, appellant's mental retardation could have been considered by the jury as a basis for recommending life imprisonment. Dixon, 283 So.2d at 10. The jury might also have been influenced by testimony of appellant's mother and wife that he was a good son, husband, and father who attempted to provide for the welfare of his family. The mother also testified that appellant's father suffered from mental illness and died in an institution.
Finally, we note that the state's case relied heavily on the testimony of six witnesses, all of whom had some part in discussing, planning, or carrying out the attempted robbery, and that all either pled to reduced charges or received promises of assistance on other charges in return for their testimony. We do not suggest that these witnesses could be characterized as accomplices or that they coerced or dominated appellant. Neither do we suggest that this circumstance alone would necessarily overcome the two valid aggravating circumstances. However, we believe there were in this instance sufficient mitigating factors for the jury to reasonably conclude that the aggravating circumstances were overcome and that life imprisonment was a proper sentence.
Accordingly, the conviction is affirmed but the sentence of death is vacated and the cause remanded for imposition of a sentence of life imprisonment.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs in the conviction, but dissents from the sentence.