473 So.2d 672 (1985)
Bobby Marion FRANCIS, Appellant,
v.
STATE of Florida, Appellee.
No. 64148.
Supreme Court of Florida.
June 20, 1985.
Rehearing Denied August 30, 1985.
*673 Stuart H. Gitlitz and James D. Keegan, Sp. Asst. Public Defenders of Gitlitz, Keegan & Dittmar, Miami, for appellant.
Jim Smith, Atty. Gen., and Richard E. Doran, Asst. Atty. Gen., Miami, for appellee.
ALDERMAN, Justice.
Bobby Marion Francis appeals his conviction for first-degree murder and his sentence of death. We affirm his conviction and sentence.
The victim, Titus Walters, was a confidential informant. He was being used in a drug investigation in early August 1975. A conversation which he had with the sheriff's office in connection with this investigation had resulted in Francis' arrest for dealing in narcotics. After this incident, Francis had vowed that he would kill Walters. The events leading to the actual murder of Titus Walters apparently began on August 16, 1975, when Opal Lee and Charlene Duncan went to Key West from Miami to deliver a package from Francis to Elmer Wesley. Francis had given Duncan some money for her bus ticket. Upon arriving in Key West, Lee and Duncan went to the home of Elmer Wesley. There they were introduced to Walters who tried to make a move on Lee. Walters continued to harass them and eventually punched Lee in the face, knocked her down, and pulled out a gun and shot at Duncan. Duncan then called Francis in Miami and told him what had occurred. Francis agreed to go to Key West, which he did on August 17, 1975. Francis, Willie Orr (who had come with Francis from Miami), Elmer Wesley, Duncan, and Lee went to Wesley's house where Francis, with the expressed intent to kill Walters, lay in wait for Walters. When Deborah Wesley Evans (Elmer Wesley's sister), Arnold Moore, and Walters arrived at Wesley's home, Francis, Lee, Orr, and Duncan came out from behind the curtain that separated the living room from the kitchen. Francis told Walters to get on his knees and asked him why he punched Francis' woman in the mouth. Walters began to plead with him to let him explain. Orr, at that point, took Evans and Moore into the kitchen. They heard a gunshot and heard Walters plead for his life. Francis had shot into the floor. Francis then took Walters into the bathroom, made him sit backwards on the commode, put a washcloth in his mouth, and taped his hands and mouth. Francis went into the kitchen and requested syringes and Drano which he proposed to inject into Walters. These were subsequently obtained and were later *674 found in Wesley's home. He went into the bathroom and shot Walters in the head, but the wound was not fatal. Francis, with pillow and gun in hand, came into the kitchen and informed those present that the victim must have strong roots because he would not die. He told the others that they were all part of the conspiracy and that they would have to dispose of the body. He then went back into the bathroom and fatally shot Walters through the heart.
When Walters' body was found in a bathtub in the Key West home, his hands were bound and his mouth was taped. Powder burns on his body indicated that he had been shot at close range. The police officers recovered a pillow with six holes and a black substance on it which were consistent with gunshots being fired through it. Several eyewitnesses testified that Francis had fired the fatal shots. Francis was convicted of first-degree murder and was sentenced to death.
Francis originally appealed his first conviction and sentence to this Court in 1976. By order entered June 20, 1978, we relinquished jurisdiction to the trial court so that Francis could file a rule 3.850 motion on the ground of ineffective assistance of trial counsel. Agreeing with Francis' claim of ineffective assistance of trial counsel, on June 11, 1979, the trial court granted Francis' motion and ordered a new trial. The case proceeded to trial in August 1979, and Francis was again convicted of first-degree murder and sentenced to death. The jury recommended that he receive a sentence of death, and the trial court imposed the sentence of death.
Upon direct appeal of this judgment and death sentence, we reversed and remanded for a new trial on the basis that defendant's nonvoluntary absence during voir dire of the jury was prejudicial error. Francis v. State, 413 So.2d 1175 (Fla. 1982). We found no merit to his arguments that the trial court erred in denying his motions to suppress evidence taken from his home and to suppress certain statements made by him.
Upon motion for change of venue, the trial court changed venue from Monroe to Dade County. Francis was retried and again convicted of first-degree murder. Although the jury recommended a life sentence, the trial court imposed the death sentence. As aggravating factors, it found that the murder was committed to hinder lawful exercise of the police powers of the state; that it was especially wicked, evil, atrocious, and cruel; and that it was cold, calculated, and premeditated without any pretense of moral or legal justification. As a mitigating factor, the trial court found that although Francis had been convicted of a felony, this felony conviction was subsequent to the murder, and therefore he had no significant history of prior criminal activity. It also stated that it had considered Francis' recent good behavior in prison. The court found that the mitigating factors and strong recommendations of the jury do not outweigh the significant strong factors in aggravation.
Francis challenges his conviction on two grounds. He first argues that the trial court erred in prohibiting him from cross-examining Deborah Wesley Evans concerning criminal charges which were pending against her. Although there was no information relating to any deal between the State and Deborah in regard to her pending murder charge, which was separate and distinct from the present case, Francis contends that it was error not to allow him to cross-examine her as to those charges so that the jury could decide whether she was testifying in such a manner as to gain favor from the State.
The State responds that no deal was ever made with Deborah, that she was convicted of the second-degree murder of her husband, and that her conviction was affirmed on appeal. It argues that the trial court did not abuse its discretion in suppressing the fact that Deborah faced a pending murder charge and that the Evidence Code prohibits introduction of evidence of an unrelated crime absent a showing of relevance. Francis did not proffer what answer Deborah would give or how her answer *675 would be relevant to prove a material fact other than her bad character or propensity toward violence. Upon review of the record, we hold that the trial court did not abuse its discretion to control the scope and manner of the cross-examination of Deborah.
Francis also challenges his conviction on the basis that the State knowingly used false testimony of Charlene Duncan relating to an agreement she had made with the State to testify at Francis' trial. He states that Duncan ultimately received more than what she had bargained for in her agreement dated August 9, 1979, and that the State failed to inform the defendant of the full extent of the consideration promised and received. He contends that he was not aware until the hearing on the motion for new trial that a motion for post-conviction relief not contemplated by the original agreement had been filed on behalf of Duncan seeking to have her conviction vacated and that this motion was notarized and actively supported by an assistant state attorney. He argues that because the jury was not informed of the exact details of what the State was doing for Duncan in exchange for her testimony, he was deprived of a fair trial.
At trial, Duncan testified that she was presently serving a mandatory twenty-five year sentence for her participation in the murder of Titus Walters; that in 1979 she agreed to testify as a witness for the State; that in return for her truthful testimony, she would either receive a new trial, be allowed to plead guilty to third-degree murder and get ten years, or get a pardon; that she was presently awaiting resentencing on this matter; that a hearing on this matter was set for April 4, 1983 (the next Monday after she testified); and that when asked if she had thus far been pardoned in any way, she answered, "No, but I can get one." In closing argument, defense counsel emphasized to the jury that Duncan was a convicted murderess who expected to go home because of her testimony at trial. He stated:
Wouldn't she have an interest in telling a version of the facts that is consistent with what is expected of her and aren't you wondering why, if she was to tell the truth back in 1979, that something wasn't done in the last four years?
... .
Now, at this point she wants to get out of jail.
She's got a mandatory 25 years to serve.
Think about that.
She started serving this eight years ago.
You know, if this doesn't work out, she has 17 more years to go.
She has 17 more years to serve  17 mandatory years without parole. Seventeen more years she won't see the light of day unless this testimony works out for her.
Now, is that incentive enough? Is 17 years of sentence incentive enough for someone to come in and tell a story?
The State argues that the material fact in the present case was the preferred treatment to be given Duncan by the State, that the nondisclosed evidence of the exact details of how Duncan was to be rewarded for her assistance did not deprive Francis of due process of law or a fair trial, and that the relevant facts that Duncan had made a deal with the State were made known to the jury. We agree. The record reveals that it was made abundantly clear to the jury that Duncan was motivated by her own self-interest to testify. Moreover, any error in regard to this matter was harmless in view of the overwhelming evidence of Francis' guilt independent of Duncan's testimony.
In addition to reviewing the record in light of the errors asserted by Francis, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required. Finding no reversible error, we affirm his conviction.
Francis also challenges his sentence of death on several bases. He contends *676 that the trial court erred in finding the aggravating circumstance that the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws. We disagree and hold that the trial court correctly concluded that this aggravating circumstance was proven beyond a reasonable doubt. As its basis for this finding, the trial court stated that
Mr. Francis knew that the decedent was a confidential informant and that the decedent was actively participating in a narcotics' investigation in Key West, Florida, and that information furnished by the decedent led to the arrest of the defendant, Mr. Francis, who advised a witness that, "The victim would have to die."
Additionally, the defendant, Mr. Francis, told another witness that the, "Victim would be dead in two weeks."
We likewise find no merit to Francis' assertion that the aggravating circumstance that the murder was heinous, atrocious, or cruel was not proven beyond a reasonable doubt. In support of this circumstance, the trial court explained:
The Court finds the Defendant, Mr. Francis, forced the victim to crawl on his hands and knees and beg for his life. The victim was taped with his hands behind his back, placed on a toilet stool for a period in excess of two hours. He was in an obvious state of panic. He was sweating profusely. He was placed in fear of death by way of injection of Drano or other foreign substances into his body.
The victim was displayed to the witnesses in the house. The victim previously begged to be beaten by the party or the witnesses, rather than be killed and was further taunted by the Defendant and then forced into the bathroom where the victim was gagged and finally the Defendant shot the decedent in the heart causing his death, and thus the Court finds beyond a reasonable doubt that this aggravating circumstance does apply.
We find that the trial court properly applied this aggravating circumstance.
We further find that the aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification was proven beyond a reasonable doubt. We have previously rejected the claim now being asserted by Francis relating to the retroactive application of this factor in Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). See also Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983).
Francis also argues that the trial court erred in overriding the jury recommendation of life imprisonment. We disagree. In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), we said that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Reaffirming Tedder, in Thomas v. State, 456 So.2d 454, 460 (Fla. 1984), we further explained:
Where a sentence of death is otherwise appropriate and it appears that some matter not reasonably related to a valid ground of mitigation has swayed the jury to recommend life, such as through emotional appeal, prejudice, or some similar impact, it is proper for the judge to overrule the jury's recommendation. See Porter v. State, 429 So.2d 293 (Fla.), cert. denied, ___ U.S. ___, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
On the present record, we find no reasonable basis discernible from the record to support the jury's life recommendation. Perhaps, the jury's recommendation was the result of the highly emotional closing argument of defense counsel made on March 29, 1983, the Tuesday before Easter Sunday, which amounted to a non-legal sermon referencing several times to Easter, the Last Supper of Jesus and his disciples, and the covenant of God's love for humanity which must be passed along with the cup *677 of forgiveness to the next generation of children.
Moreover, we note that the statutory mitigating factor of no significant history of prior criminal activity found by the trial court was based on its belief that it could not consider the fact that Francis had been convicted of a felony because that conviction occurred subsequent to the murder in question. In Ruffin v. State, 397 So.2d 277, 283 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), we expressly held "that in determining the existence or absence of the mitigating circumstance of no significant prior criminal activity, `prior' means prior to the sentencing of the defendant and does not mean prior to the commission of the murder for which he is being sentenced." Thus, the trial court was not precluded from determining that this was not a mitigating factor.
Applying the test announced in Tedder, we conclude that the facts in this case suggesting a sentence of death are so clear and convincing that no reasonable person could differ.
Finally, we find no merit to Francis' contention that the trial court unconstitutionally sentenced him to death because he chose to exercise his constitutional right to a jury trial and rejected a plea offer of life imprisonment. There is no record support for Francis' assertion that the trial court, just prior to the return of the jury verdict, promised a sentence of life if Francis would plead guilty. Even were there record support for this assertion, we find no reversible error. The trial court properly found several aggravating factors to be proven beyond a reasonable doubt. The sentence of death in this case represents a reasoned judgment based on the circumstances of the capital felony and the character of the offender after giving due consideration to the jury's recommendation.
We affirm the judgment of conviction for first-degree murder and the sentence of death.
It is so ordered.
BOYD, C.J., and ADKINS and EHRLICH, JJ., concur.
OVERTON, J., concurs in result only with an opinion.
McDONALD, J., concurs in result only on conviction, dissents on sentence with an opinion.
SHAW, J., concurs in result only.
OVERTON, Justice, concurring in result only.
I concur in result only. I am deeply concerned about the conduct of the prosecutor in this case who was simultaneously representing an essential state witness in a pending post-conviction relief proceeding during the course of this trial. The prosecutor in this instance filed the post-conviction relief petition shortly before Francis' trial, seeking a new trial for witness Duncan for her first-degree murder conviction and a vacation of her mandatory sentence of twenty-five years, which had been finalized by an affirmance on appeal. After Francis' trial, witness Duncan's post-conviction relief was granted. Pursuant to an agreement with the state, she was allowed to plead guilty to third-degree murder, for which she received a sentence of ten years with credit for time served. I find the prosecutor's conduct in failing to fully disclose his actions in this matter to be error. Because the information disclosed to the jury reflected the substantial involvement of the state in attempting to obtain a reduced sentence for the witness, I conclude the error is harmless under the test expressed in United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Nevertheless, I strongly believe the conduct of the prosecutor, in actively representing this witness without full disclosure, was improper. Clearly, there is a strong inference from this record that the prosecutor represented Duncan to obtain favorable testimony by her in this case. Such conduct, in my view, adversely affects the credibility of our justice system.
*678 I also find error in the trial court's failure to allow defense counsel to cross-examine witness Evans about the criminal charges pending against her, but conclude that error was harmless.
Given the nature of this killing, I find the jury override to be appropriate.
McDONALD, Justice, concurring in result only on conviction, dissenting on sentence.
I concur in result only on the conviction because I find that the trial judge erred in not allowing defense counsel to fully cross-examine witness Evans about criminal charges pending against her. However, considering the overwhelming evidence of Francis' involvement in this homicide, I conclude this error is harmless.
On the sentence, I conclude that a life sentence is appropriate because of the jury's recommendation. One has to consider the circumstances of this event, the family connections, the nature of the victim, the treatment of others involved. These are reasonable grounds for a jury to recommend life.