523 So.2d 158 (1988)
Carla CAILLIER, Appellant,
v.
STATE of Florida, Appellee.
No. 70297.
Supreme Court of Florida.
April 7, 1988.
*159 Ellis S. Rubin and Kelley A. Finn of Rubin, Rubin and Fuqua, P.A., Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and James A. Young, Asst. Atty. Gen., Tampa, for appellee.
EHRLICH, Justice.
Carla Caillier appeals her conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the conviction but vacate the sentence of death and impose a life sentence without the possibility of parole for twenty-five years, in accordance with the jury's recommendation in this case.
The appellant and the victim, Louis J. (L.J.) Caillier, were husband and wife. According to testimony adduced at trial, they had lived together for two years prior to marrying and had a three-year-old son at the time of the murder. The couple lived together in Mandeville, Louisiana, until L.J. moved to Tampa, Florida in an attempt to find work as a subcontractor/cabinetmaker. L.J. planned to move the family to Tampa after he found work. Shortly after L.J. moved to Tampa, appellant Caillier began working as a receptionist at a dance studio where she met Ty Payne. Caillier and Payne began to date and slept together four or five times prior to the murder.
Payne testified that Caillier told him she had paid a man $500 to kill her husband, but the man ran off with the money and did not do the job. Caillier asked Payne to kill her husband and told him that if he would not, she would have to. Payne refused. Approximately one week before the murder, Caillier again discussed her plan to kill L.J. Caillier told Payne that she did not want a divorce because she was afraid she would lose custody of her son. Caillier also told Payne she was the sole beneficiary of a $100,000 life insurance policy and that there was an additional $25,000 in the bank. This time Payne agreed to go to Tampa to kill L.J. Their plan was to wait until things "cooled down" after the murder, and then use the insurance money to live on and eventually get married. Payne further testified that Caillier, Caillier's son, and he went to a pawn shop in Slidell, *160 Louisiana to buy a gun which was paid for by Caillier. After purchasing the gun, Caillier and Payne test fired the gun to make sure it worked. They then went to the bus station where Caillier purchased a ticket to Tampa for Payne. After arriving in Tampa, Payne went to L.J.'s residence. Caillier had told him L.J.'s address and had given him a photograph of L.J. so he would recognize him. Payne knocked on the front door. When L.J. came to the door, Payne told him that his wife had been in an accident. After a short discussion, Payne shot L.J. three times, twice in the chest and once in the back as L.J. attempted to flee. After he killed L.J., Payne called Caillier to let her know it was done. Payne then returned to Louisiana using a plane ticket which was purchased by Caillier. Payne was arrested for the murder. He confessed, implicating Caillier, who was charged with first-degree murder.
Murray Campbell, a former reserve police officer who had known Caillier and L.J. for several years, testified that one month prior to the murder Caillier had asked him if he knew anyone who would kill her husband for $10,000. Campbell did not believe Caillier was serious until he heard of L.J.'s murder, at which time he went to the police with his story.
Payne was given a life sentence without the possibility of parole for twenty-five years in exchange for his testimony. Caillier was convicted by a jury which recommended life. The trial court declined to follow this recommendation, imposing the death penalty.
In her brief before this Court Caillier's sole challenge is to the imposition of the death penalty. However, during oral argument defense counsel questioned the sufficiency of the evidence to support the conviction. We have thoroughly reviewed the record, pursuant to Florida Rule of Appellate Procedure 9.140(f), and find that there was sufficient evidence to support Caillier's conviction of first-degree murder.
Caillier argues that the trial court erred by overriding the jury's recommendation of life. She maintains that the facts in this case justifying a death sentence are not so clear and convincing that no reasonable person could differ as to its appropriateness. See Tedder v. State, 322 So.2d 908 (Fla. 1975). We agree.
The trial court found two aggravating circumstances: 1) the murder was committed for financial gain;[1] 2) the murder was committed in a cold, calculated and premeditated manner;[2] and one mitigating factor, that the defendant had no significant history of prior criminal activity.[3] Although we cannot agree with Caillier that the evidence did not support a finding beyond a reasonable doubt that the murder was committed for financial gain, we agree with her that there are at least two mitigating factors discernible from the record upon which the jury could have based its recommendation. In addition to the statutory mitigating factor found by the trial court, the jury could have considered the fact that Payne was given a life sentence.
We have recognized that disparate treatment of an equally culpable accomplice can serve as a basis for a jury's recommendation of life. See e.g., Brookings v. State, 495 So.2d 135, 143 (Fla. 1986); McCampbell v. State, 421 So.2d 1072 (Fla. 1982). The trial court specifically rejected the disparate treatment accorded Payne as a mitigating factor, concluding that "the Defendant is without question extremely more culpable than her co-defendant under the facts of this case... . Ty Payne was simply someone she used to accomplish her objective." While it is true that the murder was originally Caillier's idea and it does appear likely that she would have sought out another to do the deed if Payne ultimately refused, there was certainly evidence from which the jury could have concluded that Payne was as culpable as Caillier. He was more than a mere hired gun. Payne was Caillier's lover, who, once he agreed to murder L.J., actively participated in planning the murder and selecting the murder *161 weapon. The disparate treatment accorded Payne and the fact that Caillier had no prior history of criminal activity are factors which could have influenced the jury to return a life recommendation. Since reasonable people could differ as to the appropriateness of the death sentence in this case, the jury's recommendation of life should have been followed.
Accordingly, the conviction for first-degree murder is affirmed but the death sentence is vacated. The cause is remanded for imposition of a sentence of life imprisonment without eligibility of parole for twenty-five years.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] § 921.141(5)(f).
[2] § 921.141(5)(i).
[3] § 921.141(6)(a).