**Bobby Marion FRANCIS, Petitioner,**

**v.**

**Richard L. DUGGER, Secretary, Department of Corrections, Respondent.**

**No. 88–10075–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Oct. 7, 1988.

---

Billy H. Nolas, Office of the Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Ralph Barreira, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

NESBITT, District Judge.

This cause is before the court upon Bobby Marion Francis' Petition for Writ of Habeas Corpus, filed on October 3, 1988. Because the State had scheduled Francis' execution for 7:00 A.M. on October 4, 1988, this court granted an emergency motion for stay of execution pending the resolution of the petition. For the reasons set forth below, the Petition for Writ of Habeas Corpus is Denied.

### Background

On March 29, 1985, a Dade County jury convicted Francis of first-degree murder for the 1975 death of Titus Walters.[1] The jury recommended a life sentence, but the trial judge overrode that recommendation and imposed the death penalty.[2] The verdict and sentence were affirmed on direct appeal. *Francis v. State*, 473 So.2d 672 (Fla.1985), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 908 (1986). After the Governor signed a death warrant for Francis on September 15, 1987, Francis filed two collateral attacks on his death sentence: a petition for writ of habeas corpus in the Florida Supreme Court, and a Rule 3.850 motion in the trial court. Both attacks were ultimately unsuccessful. *See Francis v. Dugger*, 514 So.2d 1097 (Fla. 1987) (denying habeas petition) and *Francis v. State*, 529 So.2d 670 (Fla.1988) (affirming trial court's denial of post-conviction relief).[3] On September 8, 1988 the Florida Supreme Court denied Francis' petition for rehearing on the 3.850 (Fla.R. Crim.P.) Motion; the governor signed Francis' second death warrant on September 12. On October 3, Francis filed this habeas petition. This court heard oral argument on the petition on October 3 and again on October 5.

The petition raises eight challenges to Francis' conviction and death sentence, and requests an evidentiary hearing on most of those claims. As the United States Court of Appeals for the Eleventh Circuit has noted,

> Case law clearly establishes that where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court.

*Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir.1987) (quoting *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963)). *See also* 28 U.S.C. § 2254 (1982). After a careful and detailed review of the entire record in this case, and after consideration of oral arguments presented, the court concludes that each of Francis' challenges either raises no disputed issues of fact, or was the subject of a full and fair evidentiary hearing in state court. Specifically, the court finds that the alleged trial errors do not involve disputed facts, and that the claim of ineffective assistance of counsel was given full consideration in the 3.850 hearing.[4]

## I. TRIAL ERRORS

### A. *Prohibition of full cross-examination of Deborah Wesley*

On the first day of trial, Francis' counsel informed the court that a local newspaper

---

1. The 1985 conviction was Francis' third for this crime. Two prior convictions by Monroe County juries had been reversed on direct appeal to the Florida Supreme Court. For a full recitation of the facts of this case, see *Francis v. State*, 473 So.2d 672 (Fla.1985).

2. The Florida capital punishment statute provides that the jury's sentence is advisory, and may be overridden by the judge. *See* Fla.Stat. § 921.141(2) & (3).

3. The trial judge also presided over the Rule 3.850 hearing.

4. Francis requested an evidentiary hearing on only one other claim, that of the alleged vindictiveness of the trial judge in overriding the jury's recommendation. As discussed in part IIA of this opinion, the court finds ample evidence in the record, as did the Florida Supreme Court, that the trial judge acted on "reasoned judgment," not out of retaliation for Francis' refusal to accept a plea to a life sentence. *See Francis v. State*, 473 So.2d at 677.

reporter had told him that a State witness, Deborah Wesley, had been charged with second degree murder two weeks earlier. The homicide occurred in Monroe County, Florida and was unrelated to Francis' case. Defendant's counsel urged that the prosecutor's failure to disclose this arrest was not only a discovery violation but constituted prosecutorial misconduct. Defense counsel requested an opportunity to depose the witness and to investigate the case. The prosecutor responded that he had not spoken to Wesley about her pending charges, and did not wish to in order to avoid the appearance of giving her favorable treatment. The prosecutor suggested that defense counsel could only inquire into whether the State had made Wesley any "offers, deals or promises" for her testimony. Additionally, the prosecutor stated that he was under no duty to disclose the incident because he knew of no evidence favorable to the accused.

The trial court found no prosecutorial misconduct and denied an adjournment of the trial, suggesting that Wesley's deposition could be taken later—the day after the completion of jury selection. The State moved to prevent the defense from questioning Wesley about the charges pending against her. The court did not limit the parameters of the deposition but stated that he would consider the State's motion in limine after the deposition was taken.

Two days later, after Wesley had been examined and cross-examined at trial, defense counsel again sought to revisit the court's ruling concerning the murder charge. He acknowledged that he had discovered no information concerning any specific deal made by the State, but proffered his desire to cross-examine Wesley as to the charge so that the jury could consider her truthfulness, bias, and possible motive for testifying. The trial court denied the proffer. At the conclusion of the trial, the prosecutor noted that Wesley's deposition had been taken and that she had answered

questions under oath regarding any promises, threats or coercion from the State.[5] She had declined to answer questions about the specific incident of the second degree murder charge. Defense counsel again stated that he wanted to bring the murder charge to the jury's attention so that they could determine whether she was testifying to promote her own best interests.[6]

■ When the defendant's guilt or innocence may turn on the reliability of a witness, the prosecutor's nondisclosure of evidence affecting the credibility or bias of the witness may deprive the accused of the guarantees of the Confrontation Clause of the sixth amendment. Particularly relevant here is the well-recognized function of cross-examination to elicit and expose a witness' motivation for testifying. *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the Confrontation Clause protects the opportunity for *effective* cross-examination, not any and all cross-examination the defense may want to pursue. *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). The sixth amendment does not prevent a trial judge from imposing reasonable limitations on cross-examination when balancing concerns of harassment, prejudice, and confusion or lack of relevancy. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

■ The State argues that there was no relevance or "logical nexus" between the pending second degree murder charge and Wesley's possible bias or motive for testifying. Although the witness was cross-examined as to other matters, it cannot be said that this area of inquiry was not critical to the jury evaluation of her motive for testifying, in view of imminence and seriousness of the second degree murder charge. The trial judge prohibited all inquiry into the possibility that Wesley's motivation in testifying was anticipation that her charge would either not be in-

---

**5.** Although the trial judge directed the court clerk to file the deposition transcript as a trial exhibit, no such exhibit is contained in any part of the voluminous record before this court.

**6.** Wesley was later convicted of second degree murder of her husband and received a thirty-year sentence. *Evans v. State,* 452 So.2d 987 (Fla. 3d DCA 1984).

creased to first degree murder or might be reduced to a lesser charge or that she might otherwise be motivated to favor the state. A criminal defendant properly demonstrates a violation of the Confrontation Clause by showing that he was prevented from conducting cross-examination that would have "exposed to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. at 318, 94 S.Ct. at 1111.

The State's counterargument is that Wesley's testimony after her arrest was consistent with her testimony at Francis' second trial. The State has submitted a supplemental appendix to the record containing Wesley's prior testimony. The State concludes that even if the pending charge had been elicited, the jury would have been able to hear that her testimony was consistent and had not been slanted to gain favor with the State. The court finds that curtailing the cross-examination of a witness with serious state charges pending against her did not "place the witness in [her] proper setting," and therefore did not put the weight of her testimony and her credibility to a test fully and fairly before the jury. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Francis has demonstrated that a Confrontation Clause violation occurred when the trial judge prohibited the proposed area of cross-examination. The issue of credibility, and of the weight to be given to prior consistent statements, was appropriate to put before the jury.

The inquiry, however, does not end here. The United States Supreme Court has held that the improper denial of a defendant's opportunity to impeach a witness for bias and motive must be viewed in light of the *Chapman v. California* harmless error analysis. *Chapman*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Van Arsdall*, the Supreme Court discussed the relevant factors in determining whether a Confrontation Clause violation is harmless:

> These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 106 S.Ct. at 1438 (citing *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972)).

■ Wesley was one of four eyewitnesses who testified about the facts of the murder. Wesley was not the only witness nor was she the only witness to testify as to certain critical facts. Although Francis argues that all the other eyewitnesses at the scene had been arrested or charged in the Walters killing, or had been shown to be otherwise unsavory and were therefore "clearly attackable and impeachable," the record reflects that all of the eyewitnesses testified as to the same facts without any substantial deviation.

Similarly, Wesley's testimony was corroborated by two disinterested witnesses, Donald Baty and Johnny Williams, who provided critical unimpeached testimony regarding key incidents leading up to the killing. The physical evidence and the ballistics expert also bolstered Wesley's testimony. Furthermore, there was no substantial evidence conflicting her testimony. The witness was cross-examined extensively on many other areas that bore on her credibility and believability. Finally, the strength of the State case was overwhelming and was not based on circumstantial or otherwise suspect evidence. The court therefore concludes that any Confrontation Clause error was harmless beyond a reasonable doubt.

B. *The State knowingly used false testimony of Charlene Duncan*

■ Charlene Duncan was a co-Defendant with Francis at his first trial. She was convicted of first degree murder and was given a life sentence without parole for

twenty-five years. In 1979, Duncan entered into an agreement with a State prosecutor in Monroe County by which she agreed to testify against Francis at his second trial. In return, the State agreed that if her conviction were overturned on appeal, the State would then allow her to plead guilty to third degree murder and receive a ten-year sentence. Duncan's conviction and sentence were affirmed; therefore, the "agreement" could not be implemented.

The prosecutor in Francis' case then entered into an agreement with Duncan's attorney whereby the prosecutor would file a Rule 3.850 motion seeking relief for Duncan on the grounds that by testifying truthfully at Francis' third trial, she would be entitled to the benefit of the original agreement, a plea to third degree murder and a ten-year sentence. The State's nondisclosure of this agreement to defense counsel was clearly, and was conceded by the State to be, a discovery violation. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The issue then, just as with Wesley's confrontation violation, is whether this Due Process error was harmless, that is, whether it can be said to have probably affected the outcome of the trial. *U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Even under *Giglio* and *Brady*, not every withholding of evidence entitles a defendant to relief. The evidence must have been material, that is, there must be a reasonable likelihood that the testimony could have affected the judgment of the jury. *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir.1986). Duncan acknowledged at trial that she was serving a life sentence without parole for twenty-five years for the murder of Walters, and that she had agreed to testify for the State against Francis in return for either a new trial or plea to a lesser offense. She testified she was scheduled for resentencing on the matter a few days after Francis' trial. She testified she had not been pardoned, but "could get one." Francis' counsel argued in his closing statement that she might receive a lesser sentence at her hearing. Although he did not know that the State had been substantially involved in attempting to obtain a reduced sentence for the witness, he fully explored with the witness that she hoped to obtain a reduced sentence or "pardon." The record was abundantly clear that Duncan was portrayed as one motivated by her own self-interest to testify.

For the same reasons recited under the harmless error test applied to Wesley's testimony, the error was harmless under *United States v. Hastings*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). After a review of the record as a whole, the court concludes that the constitutional error was harmless beyond a reasonable doubt because of the overwhelming evidence of guilt.

## II. SENTENCING PHASE ERRORS

### A. *Jury Override*

■ Francis next argues that the trial judge, by imposing the death sentence, improperly overrode the jury's recommended sentence of life without possibility of parole for 25 years. Specifically, Francis contends that the Florida Supreme Court's jury override standard enunciated in *Tedder v. State*, 322 So.2d 908 (Fla.1975), precluded the trial judge from imposing the death sentence.

The court in *Tedder* observed that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." *Tedder*, 322 So.2d at 910. This standard has been interpreted consistently by the Florida Supreme Court to mean that an override is improper when there is a reasonable basis in the record to support a jury's recommendation of life. *Harmon v. State*, 527 So.2d 182, 189 (Fla.1988). *See also Porter v. Wainwright*, 805 F.2d 930, 936 (11th Cir. 1986) (a "very strict" standard applies in jury override cases). Therefore, the ques-

tion presented is whether there are "valid mitigating factors discernible from the record upon which the jury could have based its recommendation." *Ferry v. State,* 507 So.2d 1373, 1376 (Fla.1987).

The trial court found three aggravating circumstances that existed beyond a reasonable doubt: the murder was committed to disrupt or hinder the lawful exercise of a government function or the enforcement of laws; the murder was especially heinous, atrocious, or cruel; and the murder was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. *See* Fla.Stat. § 921.141(5)(g), (h), (i).[7]

The only mitigating factors the trial court found were a non-statutory mitigating circumstance presented during the penalty phase of the trial that Francis was a model prisoner, and that he had no significant history of prior criminal activity.[8] Two employees of the facility where Francis was confined testified about his good behavior while in prison. Rochester Jordan, a corrections and rehabilitation officer, described Francis as a "rather well-behaved inmate" who helped maintain order and peace and informed prison guards of imminent danger. Michael Dave Smith, a counselor in the same facility, testified that he considered Francis to be a "role model" who often played mediator in the cell by preventing problems. The trial judge found that the mitigating factors and strong recommendation of the jury did not outweigh the significant and strong aggravating factors.

Francis argues that the record before the jury contained enough mitigating circumstances to justify the jury's basis for life recommendation. The court finds this argument without merit because it would not be reasonable for a jury to recommend a sentence of life based only upon the mitigating factors presented. *See Harmon v. State,* 527 So.2d 182, 189 (Fla.1988) (testimony that defendant was a good father, a model prisoner who acted as arbiter in inmate disputes, and someone who could contribute to society insufficient alone to justify jury recommendation of a life sentence). This conclusion is reinforced when weighed against the strong aggravating factors in this case, which include the infliction by Francis of unnecessary and prolonged suffering upon the victim.

Francis contends, however, that the jury may have reasonably relied upon another mitigating factor in addition to the testimony regarding his exemplary prison behavior, specifically, the disparate treatment accorded to other persons involved in his crime. The Florida Supreme Court has held that the disparate treatment of an equally culpable accomplice can serve as a basis for a jury's recommendation of life. *Cailler v. State,* 523 So.2d 158, 160 (Fla. 1988). In this case, Francis points to the more lenient treatment accorded three other persons involved in the murder: Arnold Moore, Charlene Duncan, and Elmer Wesley. Francis claims that all three "actively participated" in the murder by aiding and abetting Francis, and that Francis was "singled out," leaving him as the only person among the group to be subject to the death penalty.

The court finds that neither Moore, Duncan, nor Elmer Wesley was equally as culpable as Francis in the murder. Moore and

---

7. The prosecution also argued in its closing statement that two other aggravating circumstances existed which the jury could have found beyond a reasonable doubt: the defendant knowingly created a great risk of death to many persons, § 921.141(5)(c), and the murder was committed while the defendant was engaged in or attempting to commit robbery, § 921.141(5)(d). For a discussion of the validity of the trial court's findings as to aggravating factors, see part IIC below.

8. The trial judge found that Francis had no significant history of prior criminal activity, based on the mistaken conclusion that the court could not consider a felony conviction that occurred after the Walters murder. However, the trial judge could have determined that this was not a mitigating factor. *Francis v. State,* 473 So.2d 672, 677. In *Ruffin v. State,* 397 So.2d 277, 283 (Fla.), *cert. denied,* 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), the Florida Supreme Court stated that " 'prior' means prior to the sentencing of the defendant and does not mean prior to the commission of the murder for which he is being sentenced." *Id.* at 283.

Elmer Wesley were never charged with a crime, and although the record reflects that Duncan went to the store with Moore to purchase tape for Francis to quiet the victim, it is also clear that she did so under direct orders from Francis. Although the jury was aware that Duncan, who had already been convicted of first degree murder in this case, was attempting to obtain a reduced sentence (see IB of this opinion), a review of the record demonstrates that Duncan was less culpable than Francis in the homicide incident.

This court rejects the argument that the jury's recommendation of life could reasonably have been based on the disparate treatment of Francis and Duncan. "For a jury recommendation of life to be reasonable, based on lenient treatment accorded an accomplice, the jury must have been presented with evidence tending to prove the accomplice's equal culpability." *Eutzy v. State*, 458 So.2d 755, 760 (Fla.1984). Duncan's role was minor in comparison to the role of Francis, who was the "prime mover" in the murder. *Craig v. State*, 510 So.2d 857, 870 (Fla.1987).

Francis' final argument with respect to the jury override is that the trial judge was vindictive in imposing a death sentence after he had three times offered the defendant a plea bargain of a life sentence in exchange for a guilty plea. Francis contends that the fact that the trial judge renewed his plea offer just before the jury rendered its verdict, and later overturned the jury's recommended life sentence after hearing only mitigating evidence · subsequent to his last offer, constituted vindictiveness.

This court agrees with the Florida Supreme Court's conclusion that there is no record support for Francis' assertion that the trial judge, just prior to the jury verdict, promised a life sentence in exchange for a guilty plea.[9] *See Francis v. State*, 473 So.2d 672, 677. Further, the Supreme Court found, and this court agrees, that even if the record did reveal that the judge renewed his plea offer just prior to the jury

verdict, the judge's death sentence represented a reasoned judgment based on all the circumstances of the case. *Id.* "In capital cases particularly, there is no merit to the argument that the sentencing judge should have set forth the reasons why the sentence after trial was greater than what would have been approved on a guilty plea." *Hitchcock v. Wainwright*, 770 F.2d 1514, 1519 (11th Cir.1985), *rev'd on other grounds sub nom. Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 85 L.Ed.2d 347 (1987). In this case, the trial judge imposed the death penalty after fully considering the aggravating and mitigating circumstances and the jury's recommendation, and he set forth in a clear fashion his reasons for the death sentence.

B. *Ineffective Assistance of Counsel Claim*

██ Francis claims that his trial counsel was ineffective in failing to investigate and present mitigating evidence during the penalty phase of the trial. Francis contends that if trial counsel had investigated or produced mitigating evidence, the judge would not have been able to override the jury's life sentence. The components for analyzing an ineffective assistance of counsel claim were established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Francis must show that his attorney's performance during the sentencing phase was deficient and that the deficient performance caused a prejudicial result. The proper standard for reviewing counsel's performance is whether a defendant received "reasonably effective assistance." *Id.* at 687, 104 S.Ct. 2064.

At an evidentiary hearing on Francis' Rule 3.850 motion, Francis' trial counsel, Eugene Zenobi, testified that he was familiar with the case; that he second-chaired the case in 1979; and that he was familiar with the entire file since 1976 or 1977 and had "put in a lot of time in the case." Regarding the penalty phase, he stated he

---

**9.** The judge merely asked defense counsel, "Nothing to announce? No motions to make or anything?" immediately prior to the return of the jury verdict.

did not pursue a background investigation of Francis' childhood in order to prepare for the sentencing hearing because he was occupied with other matters concerning the trial. Trial counsel also testified that he "did the best [he] could," but admitted, "Perhaps in retrospect I was negligent in some areas." He testified that he and his client communicated well, that he found Francis to be an intelligent individual—a "sharp fellow"—and that he respected Francis' opinion.

At the same evidentiary hearing, a psychiatrist who interviewed Francis testified that Francis suffered from fetal alcohol syndrome, which impaired his ability to reason. A psychiatrist called by the State, however, testified that upon his review of the case, Francis' behavior was inconsistent with that of someone who was brain damaged and that there was no conclusive evidence that he suffered from fetal alcohol syndrome. Both psychiatrists agreed that Francis' I.Q. was within the normal range. Evidence was also presented that as a child Francis was poor and had been mistreated. At the conclusion of the extensive hearing, the trial judge (the same judge who had presided over the guilt phase of the trial) rejected the opinion of Francis' expert and found that Francis did not suffer from fetal alcohol syndrome. The trial judge also found that the failure to produce witnesses concerning Francis' background and environment did not rise to the level of ineffective assistance of counsel.

When a convicted defendant complains of the ineffectiveness of his counsel's assistance, the burden is on the defendant to show that the counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. There is, therefore, a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. As the Court stated in *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential" because it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining coun-

sel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. at p. 2065.

There is no question that an attorney has a duty to conduct a reasonable investigation, including investigations of the defendant's background for possible mitigating evidence. *Thompson v. Wainwright,* 787 F.2d 1447, 1450 (11th Cir.1986). Francis contends that because trial counsel did not present any mitigating evidence, he patently failed to investigate properly in preparation for the sentencing hearing. In discussing the failure of an attorney to conduct a reasonable investigation of a defendant's background for possible mitigating circumstances, the Eleventh Circuit has stated:

> *First,* it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made where the failure to put this evidence before the jury was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end.

*Middleton v. Dugger,* 849 F.2d 491 (11th Cir.1988) (emphasis original) (citing *Funchess v. Wainwright,* 772 F.2d 683 (11th Cir.1985)).

The record demonstrates that trial counsel was thoroughly familiar with Francis' case, not only from the second trial but because he had been appointed to represent Francis some nine months before the third trial. It would be reasonable to conclude that during the three years between Francis' second and third trials, counsel would have had some opportunity to prepare evidence for the sentencing phase of the trial. There was certainly ample time and opportunity to explore and investigate Francis' background and family history. Counsel also admitted that he knew that mental health evaluations could be "helpful" in a capital sentencing.

Francis relies on cases such as *Porter v. Wainwright,* 805 F.2d 930 (11th Cir.1986)

to demonstrate that the failure to present mitigating evidence in this case rises to a sixth amendment violation. Unlike *Porter*, in which no evidentiary hearing was held to determine whether it was a tactical decision not to present mitigating evidence, the trial court held a full and complete evidentiary hearing in this case. Additionally, no evidence was presented to the trial court or to this court that counsel had been denied an opportunity to investigate or explore Francis' background or mental health. No proffer was made nor were affidavits presented to this court that trial counsel would have added anything to his testimony or that there were steps he would have taken other than those about which he testified at the evidentiary hearing.

At oral argument, the court specifically asked Francis' counsel if he had any additional evidence to present regarding trial counsel's ineffectiveness. Francis' counsel offered to present any additional evidence but felt that the trial judge had applied a wrong standard in reaching his credibility determination, relying on *Code v. Montgomery*, 725 F.2d 1316 (11th Cir.1984). In this case, unlike *Code*, the state trial judge made findings of fact after an evidentiary hearing.[10] From a review of the transcript of the entire trial, the court notes that trial counsel exhibited great skill and experience in cross-examining witnesses, objecting to evidence, protecting the record by proffered testimony, and demonstrated an awareness of a complete and thorough knowledge of the facts, background of the witnesses, and details of the physical evidence. The court concludes that trial counsel possessed the knowledge, skill, and ability to present any mitigating evidence testimony if he deemed it appropriate.

The court concludes that trial counsel made a tactical decision to appeal to the jurors' emotions rather than producing mitigating evidence. His closing statement in the sentencing phase was imaginative and emotionally charged. It was a few days before Good Friday and trial counsel emphasized the Christian message of forgiveness and of avoiding revenge, hate, and read to the jury from the Bible. The court finds it significant that in Francis' first two trials, the juries unanimously recommended death, whereas the timely and emotional argument to the jury resulted in a recommendation of life imprisonment after 42 minutes of deliberation. Although not the only factor to be considered, the jury's recommendation is an important indication of the effectiveness of counsel's trial strategy.

The trial judge also conducted a full and complete evidentiary hearing on the Rule 3.850 motion. In view of trial counsel's familiarity with the protracted history of this case and the enormous opportunity of defense counsel to pursue full exploration of any background or mitigating facts, and based upon counsel's outstanding trial preparation and presentation, nothing has been presented or proffered that would lead the court to conclude that the decision not to present mitigating evidence was anything other than a tactical decision in the exercise of reasonable professional judgment. This finding precludes an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687, 105 S.Ct. at 2064; *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

## C. Improper Application of Aggravating Factors

Florida's death penalty statute provides that the sentencer may consider ten aggravating factors when determining whether the death sentence is appropriate. Francis claims that the trial judge improperly relied on three of those factors in overriding the jury's recommendation of a life sentence.

First, Francis argues that the trial judge should not have considered the "cold, calculated, and premeditated" factor because

---

10. Because *ineffective assistance of counsel is a* mixed question of law and fact, the state court's findings are not entitled to a presumption of correctness. *Goodwin v. Balkcom*, 684 F.2d 794, 804 (11th Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). This court has painstakingly reviewed the transcript of the Rule 3.850 hearing in in order to resolve the factual questions.

that factor was added to the statute after the murder occurred; thus, he contends, application of that factor to his case violates the constitutional prohibition against *ex post facto* punishments. *See* U.S. Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. In *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court noted that two critical elements determine whether a penal law is *ex post facto:* if it is retrospective, *and* if it is more onerous than the law in effect on the date of the offense. *Id.* at 30–31, 101 S.Ct. at 965. The Florida Supreme Court has repeatedly held that the "cold, calculated, and premeditated" factor applies retrospectively. *See Combs v. State,* 403 So.2d 418 (Fla.1981); *Preston v. State,* 444 So.2d 939 (Fla.1984); *Thompson v. State,* 456 So.2d 444 (Fla.1984); *Bates v. State,* 465 So.2d 490 (Fla.1985); *Stano v. Dugger,* 524 So.2d 1018 (Fla.1988). Therefore, the question before this court is whether the application of the additional aggravating factor to Francis' case produced a more onerous result.[11]

As the State notes, the facts on which the trial judge relied in applying the "cold, calculated, and premeditated" factor were the same facts underlying application of other aggravating factors, such as "hindering law enforcement" and "especially atrocious and cruel." Francis argues that the retrospective application of this factor adversely affected his sentence because the trial judge mistakenly enumerated three, rather than two aggravating factors. The Florida sentencing scheme is not founded on "mere tabulation" of aggravating and mitigating factors, but relies instead on the weight of the underlying facts. *Herring v. State,* 446 So.2d 1049, 1057 (Fla.1984). Although the trial judge erred in adding "cold, calculated, and premeditated" as a separate aggravating factor, it was proper for him to consider those specific circumstances in sentencing. The court finds that the nature of the aggravating factors carries more weight than the number of factors listed, or the labels attached thereto.

◼ Additionally, Francis challenges the sufficiency of the evidence in support of the two remaining aggravating factors. The court concludes that there is ample, even overwhelming evidence in the record to support the trial judge's finding that the murder was committed as an effort to hinder law enforcement, and that it was especially atrocious and cruel.

### Conclusion

The court has carefully considered each of Francis' claims after a thorough review of the entire record in this case. The court concludes from its review of the record, and from the arguments presented at both hearings, that the claims Francis seeks to advance are without merit.

For all of the reasons discussed above, it is hereby

ORDERED and ADJUDGED that Petitioner Bobby Marion Francis' Petition for Writ of Habeas Corpus is DENIED.

### ORDER DENYING CERTIFICATE OF PROBABLE CAUSE AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

This cause is before the court upon Petitioner's Application for Certificate of Probable Cause and Certificate to Appeal *In Forma Pauperis.* For the reasons stated in this court's Order Denying Petition for Writ of Habeas Corpus, it is hereby

ORDERED that Petitioner's application for a certification of probable cause is DENIED, and this cause is DISMISSED. Petitioner is GRANTED leave to appeal *in forma pauperis.* It is further

ORDERED that the stay of execution granted in this court's Order dated October 3, 1988 shall REMAIN IN EFFECT until October 8, 1988 at 5:00 p.m. to allow Peti-

---

**11.** Francis urges this Court to find that the *Combs* line of cases violates the *ex post facto* clause in approving retroactive application of the "cold, calculated, and premeditated" factor; however, the Court declines to reach that broad constitutional question. *But see Justus v. Florida,* 465 U.S. 1052, 1053, 104 S.Ct. 1332, 1332, 79 L.Ed.2d 726 (1984) (Marshall, J., dissenting from denial of *cert.*) (*Combs* analysis "simply untenable").

tioner to appeal to the United States Court of Appeals for the Eleventh Circuit.